26 So.2d 216

**ADAMS v. STATE.**

8 Div. 505.

Court of Appeals of Alabama.

May 21, 1946.

C. L. Watts, of Huntsville, for appellant.

Wm. N. McQueen, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

Appellant was indicted for murder in the second degree and convicted thereof. His punishment was fixed at imprisonment in the penitentiary for a term of ten years. From the judgment of conviction, sentence thereon, and the court's action in denying his motion for a new trial appellant perfected this appeal.

Appellant, Frank Adams, and the deceased Rudolph Cooper, had been together most of the night of November 18-19, 1944. A group of four or five men had gathered at appellant's quarters on the night of November 18 and there had been some dice shooting and whiskey drinking, though appellant denied drinking any of the whiskey, which had been brought by some member of the group, or that he was drinking at any time on this occasion. At about 3:30 a. m. on November 19 appellant and deceased together went to the shack of the town watchman of New Hope. Mr. Tom Herrin, the watchman, was present in the shack and testified that the pair appeared on amicable terms at this time, and until he left on his 4 o'clock round.

The watchman's shack was made out of a metal tank about 10 feet in diameter, turned on one end, with a door out in the south side. A table, stove and one or two crude stools composed the furnishings of this shack.

As Herrin was returning from his 4 o'clock round he met deceased on a highway some distance from the shack. Deceased was emotionally upset, cursing and crying, and made statements to the effect that he was going to kill the appellant, and wanted Herrin to lend him his pistol.

According to appellant, after Herrin left on his 4 o'clock round deceased told him he had to go in the army in a few days and he was going to raise plenty of hell in New Hope before he left, and he had just as soon raise it with appellant "as any son of a bitch he knew of." Deceased continued threatening appellant so he left the shack, being followed by deceased who continued this same attitude. Appellant managed to evade the deceased, hid in a gin house for awhile, and then returned to the shack where he was found by Herrin upon his return from his round.

Herrin and appellant were in the shack some 30 minutes before deceased reappeared. The testimony of these two, the only eyewitnesses to the killing, is substantially the same and is to the effect that when deceased reappeared he opened the shack door and told appellant "Damn you, you ran away from me awhile ago." He closed the door, then reopened it a few minutes later carrying an open knife in his right hand. He told appellant he was going to cut his guts out, whereupon appellant drew his pistol and held him at bay. Appellant and Herrin attempted to quiet deceased but he continued his antagonistic attitude toward appellant, cursing and threatening him, and taking a position between appellant and the door. After several minutes of this Herrin sat down at the table to place a paper dial in his watchman's clock. Herrin was occupied in this procedure and did not see the first shot fired. He looked up at the first report and saw deceased with his arms raised. He did not see a knife in deceased's hand at the time of the second shot nor did he notice anything drop to the floor. Deceased had advanced at this time some five or six feet toward appellant. According to appellant's version, the deceased, at the time Herrin was busy with his clock, began advancing on him, with knife in hand, despite warnings not to do so, and when he was even with where Herrin was sitting appellant fired. Appellant supposed he must have fired twice, though he did not remember. Appellant left the shack immediately after the shooting. Herrin placed deceased's head on a cushion and then went to notify his parents.

On rebuttal the State introduced as a witness Mr. T. R. Crutcher, Chief Deputy Sheriff of Madison County, who had investigated the homicide on the morning of its occurrence. Mr. Crutcher testified that he had seen the appellant on this occasion and he appeared to have been drinking. Also, he had interviewed Mr. Herrin who had told him then that deceased had put his knife in his pocket prior to the shooting, and that it was there at the time of the shooting.

On recall Herrin denied making such statement to Mr. Crutcher.

The body of the deceased was removed from the shack by Roy Hereford and taken to Hereford's undertaking parlor. Hereford was later assisted by Pete Long in preparing the body for burial. Hereford was in the shack about five minutes. He did not notice a knife anywhere in the shack, but both undertakers testified a closed knife was found in deceased's right-hand coat pocket when examination was made at the undertaking establishment.

Wounds from two bullets were found on deceased's body. One bullet entered below the left armpit and emerged a little to the right of the right nipple. The other bullet entered the lower right portion of deceased's skull and was found imbedded under the skin in the center of his forehead.

Mrs. Maggie Cooper, grandmother of the deceased, testified that in the early hours of the morning on which deceased was killed she was awakened by some one beating on the wall of her house, falling on her porch and calling for deceased. She investigated and found the caller to be the appellant. She saw and spoke to him, and he appeared to be drinking.

Mrs. Webster, a neighbor of Mrs. Cooper, and Thelma Mercer, a granddaughter of Mrs. Cooper who was staying at Mrs. Cooper's home that night, each testified that on the morning that deceased was killed they heard the noise mentioned by Mrs. Cooper, and some one calling for deceased. Neither saw the person making the commotion, nor could they identify his voice. Appellant's twentieth and twenty-first grounds of his motion for a new trial are based upon the court's denial of his motion to exclude the testimony of Mrs.

Webster and Mrs. Mercer because of their inability to identify the voice of the caller upon this occasion. In our opinion the trial court was correct in denying appellant's motion to exclude the testimony of these two witnesses since it was highly corroborative of the testimony of Mrs. Cooper. Although it may be inconclusive in that neither witness was able to identify the owner of the voice, the evidence was relative, and its inconclusive character was no grounds for its exclusion. Hannah v. State, 19 Ala.App. 574, 99 So. 60; Thompson v. State, 21 Ala.App. 498, 109 So. 557; Fuller v. State, 22 Ala.App. 6, 113 So. 648.

Witnesses were introduced by each side who testified to the good reputation and bad, of appellant, and to deceased's bad reputation for peace and quietude.

In our opinion no reversible error resulted from the court's refusal to give the 17 refused written charges appearing in the record. Many of the refused charges were covered by the court's very full and adequate oral charge, or the 17 written charges requested by appellant which were given.

■ Charges 1-4 were in effect general affirmative charges in favor of the appellant and properly refused under the facts and law of this case.

■ Charges 19, 20, 21, and 29 were properly refused in that they dealt with murder in the first degree, and were abstract in so far as this case is concerned.

Appellant's thirtieth ground on his motion for a new trial alleges that one of the jurors, Howard Kennedy, was gu'lty of misconduct in that, and we are now quoting from said motion:

"On Thursday morning, the 23rd day of August, 1945, before 9:00 o'clock A. M., said juror discussed said trial with one Bright Mullis, and in the hearing of the public, in the Roosevelt Barber shop in Huntsville, Madison County, Alabama; that in said conversation, Mr. Mullis said to said juror, in substance:

" 'I reckon you are going to turn Adams loose?' to which said juror replied: 'I don't know. It looks like a slim chance for him to me.'

"Movant would further show unto the court that at the time of said statement by said juror, the evidence in said cause had been concluded, but the arguments of counsel for the state and defendant had not been made, nor had the court delivered its charge to the jury; that the statement of said juror, and his discussion of said cause was in open violation to the instructions of the trial judge delivered to him and the other jurors on the evening before at the adjourning hour, and showed that said juror had prejudged the defendant, and that his entry into the further discharge of his duties as a juror, by him, was wholly perfunctory, and that as to his judgment the same was not formed as required by law, upon the evidence, the arguments of counsel, the oral charge of the court, and the written charges requested by the defendant."

Hearing on the appellant's motion for a new trial was had on October 10, 1945. Appellant's thirtieth ground, above, was supported by the introduction of affidavits of W. T. Taylor, another barber in the Roosevelt Barber Shop in Huntsville, and of Tom Herrin, the witness who testified for the State, and who was in the barber shop at the time of the alleged conversation between Kennedy and Mullis. These two affiants set forth in their affidavits facts substantially in accord with the facts set up in the thirtieth ground of the motion for a new trial. In addition Herrin states that he did not tell appellant's counsel of the occurrence until the 24th August, 1945, and that the first person he told was appellant's father, and did not disclose this information to him until after the verdict of the jury had been rendered. Affidavit of counsel for appellant confirms the date that Herrin disclosed the facts of this alleged conversation to him. It was further shown that prior to permitting the jury to separate late in the afternoon of August 22 the trial judge had instructed them that the State and defense had agreed that they might separate for the night, that such action indicated high trust in the jurors, and they were not to discuss the case with any one, or allow any one to discuss the case with them.

At this hearing the juror Howard Kennedy appeared as a witness for the State in resisting the motion. He categorically denied that the conversation set out above had occurred. He stated that upon entering the barber shop some man in a chair in the shop had asked him "Did you get through with the Adams case?" to which he replied "No." This man then asked him why the jury had not been locked up, and upon receiving Kennedy's explanation, engaged in an argument with the barber who was working on him concerning something about a watermelon.

Mullins v. State, 24 Ala.App. 78, 130 So. 527, 530, involved a motion for a new trial, posited among others, on the ground of misconduct of one of the jurors in talking to a third party, after completion of arguments by counsel. In that case Rice, J., wrote: "No ruling of the court was sought on the matter at the time it happened, so nothing more is presented for review here than a discretionary action in passing on this ground of the motion for a new trial. The trial court heard the evidence pro and con, and, indulging the presumptions in favor of the court's decision, we must hold that there was no error in overruling the motion for a new trial on this ground. Dempsey v. State, 15 Ala.App. 199, 72 So. 773; Thorne v. State, 21 Ala.App. 57, 105 So. 709; Boswell v. Land, 217 Ala. 39, 114 So. 470; Dill v. State, 5 Ala.App. 162, 59 So. 307; 16 Corpus Juris, p. 1162, § 2671."

The evidence pertaining to the misconduct of the juror Kennedy submitted at the hearing on the motion for a new trial was in conflict. It became the duty of the trial judge to exercise his reasonable discretion in weighing and determining such evidence and making his decision thereon. His resulting determination will not be disturbed in the absence of a showing of abuse of discretion. Such abuse was not, in our opinion, in any way evident.

We have examined with care all points raised in appellant's "assignment of errors," his motion for new trial, the excellent brief of appellant's able counsel, and have searched the record for error as is our duty. We have not written to all points raised by appellant's counsel, for the reason that in our opinion not all such points materially affected the substantial rights of appellant, and to have commented on all would unduly extend this opinion without serving any needful purpose. In short, in our opinion the record is free from error justifying a reversal of this case.

Affirmed.

On March 8, 1946 the judgment of affirmance heretofore entered in this case on March 5, 1946 was set aside and this case was restored to the docket for the reason that certain exhibits introduced in evidence on the main trial had not been forwarded to this court. These exhibits are now before us and have been examined. We do not think that these exhibits in anywise affect the conclusions arrrived at in our opinion heretofore handed down on March 5, 1946, and set aside on March 8, 1946.

It is therefore ordered and adjudged that the opinion hereinabove handed down in this cause on March 5, 1946, affirming the judgment of conviction, be reissued on this day as the opinion and judgment of this court.