41 So.2d 566

### GREEN v. STATE.
### 6 Div. 815.

Supreme Court of Alabama.
June 30, 1949.

Wm. Soroka and Walker Norris, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for the State.

STAKELY, Justice.

The appellant Nehemiah Green was indicted, tried and convicted of murder in the first degree. His punishment was fixed at death by electrocution. This appeal is under the automatic appeal act. General Acts 1943, p. 217 et seq., § 382(1), Title 15, Code of 1940, Pocket Part.

Thomas C. Solomon, who was manager of a Hill Grocery Store in Birmingham, Alabama, was found dead in his store on the morning of December 13, 1947. His body showed that he had been killed by one 38 caliber pistol shot fired into the middle of his back and nineteen ice pick stabs had been made in his head and chest. Appellant was arrested on the same day and confessed that he had committed the crime. There were no eye witnesses to the killing.

After making his statement the appellant carried the officers to a "vacant lot or pasture and fields" about two blocks west of the Pratt City Park and in a clump of shrubbery showed the officers where he had hidden money which he said he had taken from the store and the gun from which he said he had fired the bullet into the deceased. One of the bills was stained with blood. In his confession appellant stated that he fired the pistol once and when de-

ceased fell to the floor he stood over him and pulled the trigger again, but the pistol would not fire and then it was that seeing the deceased moving as he lay on the floor, he seized an ice pick which was on the milk box and stabbed the deceased many times. According to the confession the deceased had taken money from the safe and was counting it when appellant shot the deceased and after the stabbing appellant put the money in a bag and carried it off. Money was found in a bag in the shrubbery as appellant had stated.

The bullet which was fired into the body of deceased together with the pistol were sent to the Federal Bureau of Investigation for examination in its laboratory. An expert on ballistics from that organization testified that he had examined the bullet and the pistol and the bullet had been fired from that particular pistol. The pistol when found had one exploded cartridge and the other cartridges in the pistol were unexploded.

In his confession appellant stated that he took a part of the money out of the sack and hid this part of the money in his room, that he had two pairs of overalls, a light pair and a dark pair, and that he was wearing the dark pair when he killed deceased. The officers found $184 hidden in a jar in his room and also the dark pair of overalls in his room.

Appellant up until several weeks before the killing had worked as a helper on the truck of the Southeastern Ice Co. and helped make daily deliveries of ice to the store where deceased was killed. This was done usually about 7 a. m. but sometimes after that time. The ice would be chipped to a size which would go into the ice box. Appellant was laid off when the weather turned cold, but the proof showed that he had been seen in the store several mornings shortly prior to the killing. His confession showed that he had gone to the store on those mornings with the pistol to rob the store but made no attempt at those times because of the presence of others. It was the practice of deceased to reach the store early and at that time he would take the drawer containing the money from the safe and put it in the cash register.

The pleas were not guilty and not guilty by reason of insanity. While the defendant was in jail prior to the trial, he was sent to the Alabama State Hospital for the insane at Mt. Vernon, Alabama, for observation. He was returned to the sheriff of Jefferson County by that institution as being fit for trial. On the trial of the cause Dr. Harry S. Rowe, Superintendent of that institution, and Dr. Frank A. Kay, formerly for many years on the medical staff of that institution, testified to appellant's sanity. Dr. Kay is now in private practice as a psychiatrist in the City of Birmingham. He is Chairman of the Department of Psychiatry at the Alabama Medical College and the Hillman-Jefferson Hospital. Both Dr. Rowe and Dr. Kay testified that appellant was malingering. Others testified to his sanity. There was testimony tending to show his personal peculiarities or idiosyncrasies. This testimony was given by his aged aunt, his pastor and his friends and associates and by the jailer who observed him while he was in jail before being sent to the institution at Mt. Vernon. On the basis of these things some of the witnesses for the defense considered appellant insane. His discharge from the army on January 25, 1946, for lack of adaptability for military service included findings by psychiatrists at Northington General Hospital of "inadequacy, immaturity, irresponsibility, egocentric and socially incompatible with sexual deviation."

I. Appellant was arraigned on October 8, 1948 and at that time the court appointed counsel to defend the defendant. The court on that date set the trial for October 18, 1948. When the case was called for trial on October 18, 1948, counsel for the defendant made a motion for continuance. The court overruled the motion. It does not appear that there was application to the court for process as to any witness nor offer of showings for absent witnesses. The record fails to set forth any showing made in connection with the motion that the accused would be prejudiced by being put to trial at the time.

There appears to be practically no controversy with reference to the actual killing, but it is very earnestly insisted that the

court was in error in not granting a continuance because of the inadequate time in which to prepare properly a defense based on insanity.

Upon careful consideration, we do not think that the court abused its discretion in putting the defendant to trial. Accordingly, there was no error in this regard. Avery v. State of Alabama, 237 Ala. 616, 188 So. 391, certiorari denied 308 U.S. 540, 60 S.Ct. 119, 84 L.Ed. 455; affirmed 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Morris v. State, 193 Ala. 1, 68 So. 1003; McAdams v. State, 216 Ala. 659, 114 So. 39; Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814; Jarvis v. State, 220 Ala. 501, 126 So. 127; Peterson v. State, 231 Ala. 625, 166 So. 20.

II. Error is sought to be predicated on the refusal of the defendant's motion for a mistrial on the ground that a state witness spoke in open court to a juror. This incident occurred on the morning of the second day of the trial after the jury had been seated in the jury box and immediately prior to the entry in the courtroom of the trial judge. A state witness, named B. W. Lewis, who had testified the day before and who was on his way to the witness stand stopped in front of the jury box and conversed with a juror. When the motion for mistrial was made the following took place as shown by the record.

"The Court: Did you talk to a juror?

"Mr. Lewis: Spoke to him.

"The Court: What did you say?

"Mr. Lewis: 'Good morning,' and asked him if he rested all right last night.

"The Court: What juror? Stand please.

"Juror: He asked me if I slept well last night and I told him 'No.' That's all.

"The Court: Motion for a mistrial overruled.

"Mr. Norris: We except.

"The Court: That doesn't have anything to do with the case one way or another."

It is quite true that the jury in their deliberations should be separated from and uninfluenced by the outside world and there should be no misconduct that might have influenced them and which might have affected the verdict that was rendered. Roan v. State, 225 Ala. 428, 143 So. 454. But in the absence of any showing to the contrary we must assume that the court was satisfied as to what conversation had passed between the witness and the juror and upon this basis decided that the defendant was not prejudiced. On a matter of this kind we consider the ruling of the trial court as being presumptively correct and conclude that the court acted within its discretion in denying the motion. 23 Corpus Juris Secundum, Criminal Law, § 1449, page 1182; Brown v. State, 33 Ala. App. 152, 31 So.2d 652, certiorari denied 249 Ala. 433, 31 So.2d 656, 22 A.L.R. 255; Adams v. State, 32 Ala.App. 367, 26 So.2d 216.

III. It is argued that the court erred in allowing in evidence over defendant's objection a certain photograph, the idea being that the photograph tended to influence or prejudice the minds of the jury because it showed a pool of blood in the location in the store where the deceased was found in a critically wounded condition. There was no error in this regard. Blue v. State, 246 Ala. 73, 19 So.2d 11; Pilley v. State, 247 Ala. 523, 25 So.2d 57.

We have considered the points argued by counsel in brief and we have also examined the entire record to see if there were any matters prejudicial to the defendant. From our examination of the entire record, we think that the judgment of the lower court must be affirmed.

Affirmed.

BROWN, FOSTER, LIVINGSTON, LAWSON and SIMPSON, JJ., concur.