61 So.2d 707

### SMITH v. STATE.
#### 5 Div. 537.

Supreme Court of Alabama.
June 26, 1952.

Rehearing Denied Nov. 6, 1952.

G. C. Walker, Clanton, and Goldbold and Hobbs, Montgomery, for petitioner.

there charged or intrusted with the collection, receipt, safekeeping, transfer or disbursement of money or funds under the control of the county, converted contrary to law to his own use or to the use of another a portion of such money. The indictment, as we have said, contains the substantial requirements of section 127, supra.

. It was insisted in the court below, renewed in the Court of Appeals and here, that petitioner's demurrer to the indictment should have been sustained. A feature of the demurrer goes to the point that the indictment does not allege that in converting this money petitioner entertained the intent to defraud, or words to that effect, which are essential to the common law offense of embezzlement. As pointed out by the Court of Appeals, that contention has been effectually disposed of by the decisions of this Court. Section 127, supra, makes no such requirement, McGilvray v. State, 228 Ala. 553, 154 So. 601; Garner v. State, 229 Ala. 600, 158 So. 546, neither does section 140, Title 14, Code. Ex parte Cowart, 201 Ala. 525, 78 So. 879.

It is also insisted that the demurrer to count 6 of the indictment should have been sustained, in that the count does not allege that the conversion was knowingly done. The statute does not use the word "knowingly" in that connection. Section 232, Title 15, Code, requires an indictment to state the facts constituting the offense in ordinary and concise language. We will first assume, for the sake of argument, that to constitute an offense under section 127, supra, the conversion must have been knowingly done. As a general rule when a statute creates a new offense, and the language of the statute describes its constituent elements, it is sufficient to follow its language, but when the wording of the statute does not embrace all the elements of the offense it is not sufficient to charge it in the language of the statute. State v. Dodd, 17 Ala.App. 20, 81 So. 356; Doss v. State, 23 Ala.App. 168, 123 So. 237; Smith v. State, 26 Ala.App. 271, 157 So. 872.

Appellant's argument is that every wrongful conversion is not done with knowledge that it is wrongful: that civil liability

Si Garrett, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., opposed.

FOSTER, Justice.

Petitioner, as shown by the opinion of the Court of Appeals, was convicted on count 6 of the indictment against him. He seems to have been acquitted on the other five counts said to be on a charge of obtaining money under false pretenses, to state the charge in broad terms. Petitioner was probate judge of Chilton County at the time.

Count 6 of the indictment, under which he was convicted, is in the language of section 127, Title 14, Code, defining statutory embezzlement in general terms. That statute makes it embezzlement for any such persons so charged or intrusted with certain funds to convert any of such funds to his own use or the use of others in any manner contrary to law.

Count 6 alleges that this petitioner while chairman or president of the court of county commissioners, who was then and

for conversion is not dependent upon a knowledge that the property is that of another, and that, therefore, a charge of conversion unlawfully under section 127 is not equivalent to a charge that it was knowingly converted. Geneva Gin & Storage Co. v. Rawls, 240 Ala. 320, 199 So. 734. But if a charge under section 127 can only be sustained when the conversion is knowingly done, it is so because of the use in it of the term "converted," not using the word "knowingly" or its equivalent. If the word "converted" in the statute means "knowingly" done, it also means that in the indictment. So that we cannot agree that the indictment is insufficient in that respect.

The trial judge in his oral charge to the jury made the following statement: "Now, gentlemen, before you can convict the defendant under count 6 and under that Code section, the burden is on the State to prove from the evidence in the case beyond a reasonable doubt that the defendant knowingly and intentionally converted to his own use funds belonging to Chilton County and that he was such an officer at the time that he received or disbursed such funds and that he converted them to his own use contrary to law, knowingly and intentionally doing so."

The contention is made on motion for a new trial that such being declared as the meaning of section 127, supra, the verdict of the jury was contrary to that instruction, and that a new trial should have been granted on that account. In response to that claim the Court of Appeals seems to have been of the opinion that that interpretation of the statute was at the instance of the defendant and if more beneficial to him than the law justified, the failure of the jury to observe its requirements should not be availed of by the defendant. But the Court of Appeals did not base its ruling on that theory, but upon the statement simply that the weight of the evidence was not contrary to the finding of the jury on that issue. We understand that to mean that, assuming that the jury was bound by that instruction, they were justified from the evidence in finding that the conversion was knowingly done. In com-

ing to that conclusion the evidence is not sufficiently set out for us to take a contrary view. The extract above quoted from the oral charge was further supported by written charges requested by the defendant, which were given to the jury, and all based on the theory, broadly speaking, that the conversion must have been knowingly done.

While we do not feel that we are in position to determine whether or not the motion for a new trial should have been granted because the evidence is not sufficient to sustain that theory, we do think it is important for us to determine whether or not section 127, supra, requires the conversion to be knowingly done in order to constitute a crime. Section 140, supra, provides that the conversion must be knowingly done in order to constitute the offense there provided for. As we mentioned above, section 140 has been declared by this Court to be such that it is not necessary to constitute the offense that the conversion be done with a fraudulent intent. Ex parte Cowart, supra. We also held that the offense declared in section 127 does not require that the conversion be done with a fraudulent intent. McGilvray v. State, supra; Garner v. State, supra.

We think there is a distinction between a conversion knowingly done and one done with a fraudulent intent. A conversion may be knowingly done when with knowledge of the fact that the money converted belongs to the State, county, city, or town, it is used or unlawfully deposited in a bank and there retained without the intention to permanently deprive its owner of the same. Such knowledge does not necessarily imply that there was a fraudulent intent. It may have been deposited in a bank, not subject to the limitations of section 140, supra, and no loss actually result: yet it may be a crime under section 127, supra, when the officer knew the money was not his. We think it was not the purpose of the law to make it a crime for an officer in good faith to make such deposit if he entertained the honest conviction that the money or funds so converted were his own. We think that is the import of the word "knowingly," as used in section 140,

and that the word "converted" as used in section 127 should not be so construed as to carry a different import in that respect from its use in section 140.

We believe, therefore, that if other elements of the offense are complete, it would be proper from all the circumstances of the case to submit to the jury the question of whether or not the defendant not only converted the money of the county to his own use, but also, at the time he did so whether he entertained an honest substantial belief that he had a right to do so when the evidence justifies such a finding.

We think, however, the opinion of the Court of Appeals does not show reversible error in that respect, and that the trial judge correctly instructed the jury with regard to that question.

It is also insisted that petitioner was not intrusted with the collection, receipt, safekeeping, transfer or disbursement of any money belonging to the county and, therefore, that he was entitled to the affirmative charge with respect to count 6. Contention is made that if there is any criminal violation whatsoever shown by the evidence, it would be such as is defined in section 32, Title 11, Code, which in substance provides that any judge of probate who corruptly receives any fee or item of cost not authorized by law must on conviction be fined not less than one hundred nor more than five hundred dollars. He could not have been convicted under that statute on count 6 of the indictment, upon which he was tried. Extortion, as provided for in that statute, requires the payment of an unlawful fee to the judge of probate. If he receives and appropriates to his own use funds of the county, though upon the audit and allowance by the court of county commissioners, for the purpose of paying to himself a claim of a sort not authorized by law to be paid by the county, he thereby misappropriates county funds with the aid of the county commissioners. It is not a payment by the county. Mobile County v. Williams, Judge, 180 Ala. 639, 61 So. 963.

The claim which petitioner asserted against the county, here involved, was of the same legal status as that considered in Mobile County v. Williams, Judge, supra. In that case the Court held that it was not one of the kind subject to audit and allowance under what is now subsection 4 of section 12 and section 114, Title 12, Code, but was a misappropriation by a public officer of public money belonging to the county. It was not the collection of more than the law allows as a fee. There was nothing authorized by law to be paid on that account and, therefore, the county paid nothing. The court of county commissioners had no jurisdiction in respect to its audit and allowance. What they do without jurisdiction is not done by the county. It would make no difference whether the claim was audited and allowed. In no event was it lawful for the probate judge to cause a warrant to be issued in his favor for the amount of the claim, if it be without authority of law, as is contended by the State.

Under count 6 of the indictment defendant must have been charged or intrusted by legal authority with the collection, receipt, safekeeping, transfer or disbursement of money or funds under the control of the county. He was not intrusted by legal authority with the collection, receipt, safekeeping or transfer of the fund in question. If he was guilty of embezzlement under that count it was because he was intrusted by law with the disbursement of the funds of the county which had reached the county treasurer. The disbursement of such county funds is by the express terms of the law to be made by the court of county commissioners. Sections 12 and 46, Title 12, Code. The probate judge must issue warrants on the county treasurer for the payment of the claims which have been audited and allowed by the county commissioners. Sections 51 and 76, Title 12, Code.

In Jeffersonian Pub. Co. v. Hilliard, 105 Ala. 576, at page 578, 17 So. 112, at page 113, it is said:

"When the claim is of the character with which the county is, by law, chargeable, the audit and allowance create a prima facie liability on the county; the power of the commissioners' court is exhausted; and the prima

facie liability of the county imposes on the judge of probate the duty of giving the claimant a warrant on the county treasury for the amount allowed. *He is without authority to revise the action of the commissioners' court in the allowance of the claim, as he would be without authority to revise its action in the disallowance of a claim.* The duty of the judge is obedience to the mandate of the court; a mere ministerial duty imposed on him in his ministerial capacity of the keeper of the records of the court, in the performance of which he is without discretion. Commissioners' Court v. Moore, 53 Ala. 25. In 'Jack v. Moore, 66 Ala. [184], 187, it was said: 'The issue of warrants on the county treasury in payment of claims the commissioners' court have allowed, and ordered to be paid, is a ministerial duty imposed on the judge of probate, in the performance of which he has no discretion, unless the order of allowance' is itself void, and on its face an absolute nullity, imposing no duty and conferring no rights. When, on its face, the allowance of the claim is valid, and is the instrumentality for the payment of a claim chargeable on the county, he is without discretion. His duty is plain and simple' ". (Italics supplied.)

We have recently had occasion to refer to the nature of duty thus imposed on the probate judge upon the principle of that authority. Wyatt v. Parrish, Judge, 255 Ala. 145, 50 So.2d 424; Wyatt v. State, Ala.Sup., 57 So.2d 366.

In that connection it was said by the Court of Appeals in the instant case:

"While the appellant was probate judge and presiding officer of the court of county commissioners, he filed a claim against Chilton County for the indicated amount for ex officio fees in connection with his duties relating to the public roads of the county. He directed or caused the clerk of the court of county commissioners to draw a warrant against the funds of the county for the amount of the claim. This warrant was delivered to appellant and credited to his account at the local bank."

If the judge of probate as chairman of the court of county commissioners, without any audit or allowance of a claim, or if the claim is allowed but is not authorized by law, issues a warrant payable to himself, and he collects the same, it would not be by virtue of any authority of law given to him to disburse funds of the county. It may constitute a crime under some other feature of the law. But in order for it to be a violation of section 127, supra, for present purposes, it is necessary that the judge of probate as chairman of the court of county commissioners, should be charged or intrusted with the disbursement of county funds, a part of which he paid himself on an unlawful claim. We think that statute does not apply merely to an instrumentality which is used in a ministerial manner by the court of county commissioners in carrying out the duty enjoined upon it to audit or allow claims against the county.

In the case of Garner v. State, 26 Ala. App. 246, 158 So. 543; Id. 229 Ala. 600, 158 So. 546, the defendant was a city commissioner of a city, and as such he was charged by law, jointly with other commissioners, with the control of the business and affairs of the city including the disbursement of its funds. He was therefore intrusted with their disbursement along with the other commissioners. That is a controlling difference between the Garner cases and this one.

In the case of Smith v. State, 26 Ala. App. 271, 157 So. 872, the defendant was the clerk of a city. His duties in respect to disbursing funds of the city were not referred to in the opinion, but were controlled by what is now section 422, Title 37, Code. It was made his duty to issue warrants for approved claims, but before doing so he must audit the claim and certify to its correctness. It is therefore clear that he was intrusted with an important feature in the allowance and payment of claims, and was not the mere instrumentality of the city council.

The claim here involved is provided by section 29, Title 11, Code, fixing a scale

of fees for judges of probate. It contains an item of $400 annually for his duties in relation to public roads, provided that it shall not apply to any probate judge who receives net annual compensation from his office exceeding $5,000. It was shown that petitioner as probate judge received during the period in question net annual compensation from his office exceeding $5,000.

Defendant has made the contention throughout that the proviso is unconstitutional and void for various reasons. We have in this discussion treated it as valid without intending to so hold. We have not given its invalidity consideration for that is unnecessary. Of course, if it is invalid, there was no misappropriation in the payment of the claim duly audited and allowed. If it is valid, the amount of the claim was received by defendant without authority of law. We think that, although it may have been paid without authority of law, it does not appear that count 6 of the indictment has been established for the reason here indicated. It was not necessary to consider other matters treated by the Court of Appeals.

Reversed and remanded to the Court of Appeals.

LIVINGSTON, C. J., and STAKELY, J., concur.

SIMPSON and GOODWYN, JJ., concur specially.

BROWN, J., dissents.

LAWSON, J., not sitting.

SIMPSON, Justice (specially concurring, with whom GOODWYN, J., joins).

I concur in the result attained, but think a reversal can be rested on broader grounds.

I am beginning to doubt the soundness of the principle of the case of Garner v. State, 229 Ala. 600, 158 So. 546, and its predecessors referred to in the opinion of Mr. Justice Foster, supra, to the effect that it was the design of § 127 to eliminate criminal intent as an essential element of the serious crime of "embezzlement of public funds" denounced by that statute.

I am loath to overrule decisions and think my position as a devotee of the doctrine of *stare decisis et non quieta movere* is exemplified in previous utterances both in this court and in the Court of Appeals. But as I see it, the precedent of the few cases ending with Garner v. State, supra, construing § 127 does not seem to be of that grave importance in requiring adherence to this ancient maxim as to overweigh the beneficence of a recedence from such a view in the interest of the administration of criminal justice.

Certainly, I will admit that by advocating this position I am perhaps reorientating my view more than anyone else. A reference to the Garner case will disclose that status, since I, as circuit solicitor, drew the indictment and represented the State in the prosecution. Nevertheless, none is infallible and on more mature thought I am becoming convinced that such a construction runs counter to the American system of justice and is fraught with many evil consequences which is a more fundamental view of the statute would alleviate.

Some of the untoward results possible under the prevailing view are readily manifest and are to be easily reflected in the opinions of these few cases, supra. Absent of any *animus furandi* or other felonious intent, a public officer, county governing body or the governing body of any municipality or school district, etc., or the head of any department of state, county or city, in any way charged or entrusted with the safekeeping or disbursement of public monies, funds, securities, bonds, choses in action or other property, etc., who or which might disburse or transfer such money, property, etc., *when not authorized by law,* is made guilty of embezzlement under the statute and subject to criminal prosecution and if convicted to be punished as a thief, even though it might be then supposed that such disbursement or transfer was authorized. However ingenuous the conduct or innocent the motive prompting the disbursement or transfer, or however accidental or fortuitous might have been the act of disbursement or transfer, this innocent public official or board would be none

the less guilty and subject to the dire penalties of the statute. In our system of government, this is too serious a potential of every political office, where prosecutions may be easily started, to be lightly overlooked. I do not think the law should be implied to operate to such a strenuous result; and until the legislature shall have made an explicit direction to that effect, no such connotation should be put upon the statute.

My reason for this view is fundamental. Section 127 proscribes the embezzlement of public funds and imposes on the offender the same serious punishment as if he had stolen it. The term embezzlement connotes a corrupt or fraudulent intent. It partakes of all the elements of a common law crime and is akin to stealing. As the states codified the common law crimes, even if their enactments were silent on the subject, their courts, with almost unwavering unanimity, assumed that omission did not signify disapproval of the principle, but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. They have adhered to the central thought that wrongdoing must be conscious to be criminal and have emphasized it by requiring that only those who were blameworthy in mind should be convicted of infamous common law crimes, regardless of a specific expression in the statute to that effect. Indeed, our own appellate courts supported the theory. Farzley v. State, 231 Ala. 60, 163 So. 394; Nickerson v. State, 22 Ala.App. 640, 119 So. 243; Mitchell v. State, 32 Ala.App. 467, 27 So.2d 30; Id., 248 Ala. 169, 27 So.2d 36.

True, the rush of modern civilization, with its multitude of complexities, has influenced the courts to relax the strictness of the ancient doctrine by ignoring the omission in lesser statutory crimes of a criminal intent—so-called "public welfare offenses," such as traffic violations, violations of the narcotic, prohibition and public health laws, and the like; but as stated by Mr. Chief Justice Taft in United States v. Balint, 258 U.S. 250, 251, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604, 605, these are "regulatory measures in the exercise of what is called the police power where the

emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes".

And in the case of Tenement House Dept. v. McDevitt, 1915, 215 N.Y. 160, 168, 109 N.E. 88, 90 Ann.Cas.1917A, 455, Judge Cardozo, then of the New York Court of Appeals, in speaking of the varieties of regulations with reference to tenement houses sanctioned by money penalties, the landlords contending that a guilty intent was essential to establish a violation, observed:

"The defendant asks us to test the meaning of this statute by standards applicable to statutes that govern infamous crimes. The analogy, however, is deceptive. The element of conscious wrongdoing, the guilty mind accompanying the guilty act, *is associated with a concept of crimes that are punished as infamous.* * * * But in the prosecution of minor offenses there is a wider range of practice and of power. * * *" (Emphasis supplied.)

So the spirit of the doctrine which admonishes that the courts should be careful not to enlarge the reach of enacted crime by implying an omission, when the fundamental theory of guilt of infamous crimes embodied the specific idea of criminal intent, should be ever kept in view.

The purpose and specific effect of doing away with the requirement of a guilty intent in the prosecution for lesser crimes was to ease the effort of the prosecution and to strip the defendant of such benefit as he naturally derived at common law from an innocent purpose and thereby circumscribe the usual freedom theretofore allowed juries in determining whether the accused really intentionally did wrong. Such a manifest impairment of the immunities of the individual should not be extended to common law crimes on judicial initiative, but only when the enacting body by plain and specific language so makes it—which was not done in § 127.

A late and leading case on the subject and which expresses the theory in pertinent and positive language is Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, opinion by Mr.

Justice Jackson. There the statute under consideration made it a criminal offense to embezzle, steal, purloin, or knowingly convert government property, and the holding was that to "knowingly convert" embodied the usual element of criminal intent requisite in every common law crime. It is notable that deliverance was without any dissent—not a too usual occurrence with that eminent court. I have been aided by that opinion and wish to conclude with this quotation from it:

"Stealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation; they are invasions of rights of property which stir a sense of insecurity in the whole community and arouse public demand for retribution, the penalty is high and, when a sufficient amount is involved, the infamy is that of a felony, which, says Maitland, is ' * * * as bad a word as you can give to man or thing.' State courts of last resort, on whom fall the heaviest burden of interpreting criminal law in this country, have consistently retained the requirement of intent in larceny-type offenses. * * *" 342 U.S. 246, 72 S.Ct. 248, 96 L.Ed. 288.

I therefore asseverate that a criminal statute as the one under consideration—the true purpose of which is to punish the offender as a thief—which no more than implies—if that—an elimination of criminal intent or guilty scienter from the offense, should not without more specific language be so construed; that inherent in this crime of embezzlement—as embodied in § 127—as in stealing and purloining, is that fundamental concept of criminal conduct, awareness of wrongdoing, and the statute should be so interpreted until the legislature speaks more specifically to the contrary. The prevailing interpretation, I am becoming convinced, results in ignoring the fundamental concept of the requisites for the conviction and punishment of infamous crimes and radically changes the "weights and balances in the scales of justice" in favor of the prosecution—a thought never dreamed of in our common law philosophy.

The majority opinion, supra, really seems to me to be driving in the direction of this same view.

So considered, the indictment was defective in omitting this essential allegation and demurrer taking the point was well conceived. On this ground I would rest a reversal.

GOODWYN, J., concurs in these views.

BROWN, Justice (dissenting).

I am not in agreement with the holding of the majority of the Justices in their finespun theory. that the Judge of Probate is a mere automaton—a stooge or tool—of the Court of County Commissioners, in the disbursement of the funds of the county garnered by taxation for governmental purposes. The signature of the Judge of Probate to warrants or checks issued in payment of claims and allowances, audited and allowed by the court of which he is a part, is next to the final act in the process of disbursement of public funds, set up by law as a safeguard against wrongful conversion of public funds of the county. While the issuance of the warrant is a ministerial act in the process of disbursement, it does not relieve the Judge of Probate of the duty of determining for himself whether or not the claim is a lawful claim in the first instance. If it is not a lawful claim but constitutes a wrongful conversion of the money of the county, it is the duty of the Judge of Probate to contest the same, by refusing to issue the warrant or check. McGough, Probate Judge, v. State ex rel. Stovall, Ala.Sup., 57 So.2d 527.[1] The reports of the decisions of this court are full of just such controversies. Nor is the treasurer justified in paying warrants issued by the Judge of Probate, if issued for claims not authorized by law. Mobile County v. Williams, Judge, 180 Ala. 639, 61 So. 963.

The defendant in this case, as the evidence shows, knew that the office of which he was the incumbent paid more than five thousand dollars per annum. He also had

I. 257 Ala. 34.

94

knowledge that the statute provided that such incumbent was not entitled to an allowance for ex officio public road services. Nevertheless, he continued to file claims for such services, his excuse being that he thought the law was unconstitutional. Still he took no steps to test its constitutionality. The law is a general law, applicable to all the counties of the state. It does not violate § 110 of the Constitution. By repeated amendments to the Constitution of 1901, uniformity as to fees and allowances of public officers has effectually been destroyed. Almon v. Morgan County, 245 Ala. 241, 16 So.2d 511; Dillon v. Hamilton, Tax Collector, 230 Ala. 310, 160 So. 708.

The record presents a case where a man, honored by the people, through cupidity and greed has breached their confidence by taking from the public treasury funds and converting the same to his own use, in violation of the statutes under which the indictment was drawn. Code of 1940, Tit. 14, § 127.

I am of opinion that the holding of the majority emasculates the last cited section of the code, as applicable to Judges of Probate, and saddles the entire responsibility of guarding the public funds on the Courts of County Commissioners. I am further of opinion that the judgment of the Court of Appeals should be affirmed.

Therefore, I respectfully dissent.