99 So.2d 435

**M. D. TINGLE, as Chairman of the Board of Revenue and Control of Chilton County,**

v.

**J. D. PITTMAN TRACTOR COMPANY, Inc.**

5 Div. 681.

Supreme Court of Alabama.

Dec. 19, 1957.

Grady Reynolds and Reynolds & Reynolds, Clanton, for appellee.

Jos. J. Mullins and Jos. J. Mullins, Jr., Clanton, for appellant.

LAWSON, Justice.

This is a mandamus proceeding instituted in the Chilton County Law and Equity Court by J. D. Pittman Tractor Company, Inc., to require M. D. Tingle, as Chairman of the Board of Revenue and Control of Chilton County to sign and deliver to relator a warrant for the payment of a claim against Chilton County interposed by relator, which claim relator alleged in his petition for mandamus had been ap-

proved by the Board of Revenue and Control of Chilton County.

Upon the filing of the petition, it was ordered that an alternative writ of mandamus issue to respondent. An alternative writ was duly issued, served and returned to the court. After service of the alternative writ upon respondent, he filed a demurrer to the petition. Thereafter the prayer of the original petition for mandamus was amended as was the alternative writ. The respondent was then permitted to withdraw his demurrer and to file a motion to quash the alternative writ as amended. The motion to quash the alternative writ as amended was overruled. The respondent then with permission of the court refiled his demurrer to the petition for mandamus as amended. The demurrer was overruled. Thereupon the respondent filed what is termed an "answer and return to the petition and alternate writ of mandamus in this cause * * *." The averments of the answer or return were not put in issue or controverted as relator could have done under our statute, § 1073, Title 7, Code 1940, if it had been so inclined. Shortly thereafter the trial court rendered a judgment wherein the issuance of the peremptory writ of mandamus was ordered. Such a writ was duly issued and served. From the judgment ordering the issuance of the peremptory writ the respondent has appealed to this court.

■ It is settled that the judge of the Chilton County Law and Equity Court (now County Court of Chilton County) has authority to order the issuance of writs of mandamus and appeals from such orders come to this court. Wyatt v. Parrish, 255 Ala. 145, 50 So.2d 424.

■ In mandamus proceedings the alternative writ is not only process but part of the pleading. The sufficiency of the answer to the alternative writ will be considered without further pleading although it is not improper for relator to interpose demurrer or motion to quash the answer. Longshore v. State ex rel. Turner, 137 Ala.

636, 34 So. 684; Ex parte Montgomery, 247 Ala. 497, 25 So.2d 171. And as shown above, the relator may take issue with and controvert the averments of the answer. § 1073, Title 7, supra; Longshore v. State ex rel. Turner, supra; Ex parte Smith, 252 Ala. 415, 41 So.2d 570.

■ It is well settled that the averments of fact in the answer to the alternative writ in mandamus proceedings, when not controverted, are to be taken as true. Lee v. Cunningham, 234 Ala. 639, 176 So. 477, and cases cited; Ex parte Beard, 246 Ala. 338, 20 So.2d 721; Ex parte Jones, 246 Ala. 433, 20 So.2d 859; Ex parte State ex rel. Atlas Auto Finance Co., 251 Ala. 665, 38 So.2d 560; Ex parte Mullins, 258 Ala. 665, 64 So.2d 829.

■ Since the averments of the answer to the alternative writ issued in this case were not put in issue or controverted, the peremptory writ should not have issued if those averments in the answer which are well pleaded show legal cause why that writ should not issue. On the other hand, if the answer to the alternative writ is not sufficient as a defense to the issuance of the peremptory writ, then that writ was correctly issued. Wyatt v. Parrish, supra, and cases cited.

In his said answer the respondent by admitting the averments of paragraph 1 of the petition for mandamus says that he is the judge of probate of Chilton County and has held that office since January, 1953, and further says that by virtue of his said office he is chairman of the Board of Revenue and Control of Chilton County and, therefore, is charged with the duty of signing checks drawn upon the county depository or county treasury. The Board of Revenue and Control of Chilton County was created by Act of September 12, 1951, Acts of Alabama, 1950–1951, Vol. 2, p. 1505. By Section 4 of that act the probate judge is made chairman of the board and is said to have "all the powers, duties, limitations and responsibilities with relation to the Board herein created as does the Pro-

bate Judge with relation to the courts of county commissioners, under the general laws of this State, except in so far as such powers, duties, limitations and responsibilities may be inconsistent with the provisions of this Act." Nothing in "this Act" runs counter to the provisions of § 51, Title 12, Code 1940, which impose upon the judge of probate the duty to sign all warrants drawn. upon the county depository or county treasury.

The respondent in his answer to the alternative writ also admits the averments of the petition for mandamus to the effect that on, to wit, February 26, 1957, the relator was the owner of a described motor grader (road equipment) which one of relator's agents delivered to the engineering department of Chilton County, which department was in charge of the construction, repair and upkeep of the public highways and roads of that county; that the said motor grader was received, inspected and approved by the engineering department and since that time has continued to be used by Chilton County in constructing, repairing and maintaining its public roads; that on June 21, 1957, relator filed with the clerk of the Board of Revenue and Control of Chilton County a claim against Chilton County in the amount of $14,666, with interest at 6% from February 26, 1957; that thereafter on, to wit, June 24, 1957, the said claim was by the clerk of the Board duly presented to the Board at its regular meeting on, to wit, June 24, 1957, and thereupon a majority of the members of the Board voted for a resolution which reads in pertinent part as follows:

"* * * Whereas, the Clerk of the Board presented a claim by J. D. Pittman Tractor Company, Inc., in the amount of $14,666, plus 6% interest beginning March 26, 1957, and ending June 24, 1957, $219.39, making a total of $14,885.39, which had been filed with him against the county and requested that it be considered as an equitable claim as provided under Title 12, § 110.

"Now, Therefore, Be It Resolved And Ordered: That The Chairman of this Board is hereby directed and authorized to draw a proper county warrant on the county treasury for the correct amount in payment of the above described claim."

In his answer the respondent also admits that on, to wit, June 24, 1957, after relator's claim had been approved by the Board of Revenue and Control, the clerk of that Board prepared and presented to respondent a warrant duly drawn by the clerk in the amount of $14,885.39 which he failed and refused to sign.

The foregoing summary does not include all of the averments of the answer to the altenative writ but we pause at this point to consider a contention made by relator, the appellee, which if well founded will make it unnecessary to give consideration to the remaining averments of the answer, for if relator's contention is correct a judgment of affirmance would naturally follow.

Relator says that since the answer shows that its claim was duly filed and presented to the Board and that a majority of the members of the Board approved the claim by voting for the adoption of the resolution set out above, it became the ministerial duty of the probate judge to issue and deliver the warrant to relator in payment of its claim, and, hence, under many decisions of this court the lower court acted correctly in ordering the issuance of the peremptory writ of mandamus.

There is no contention made by the respondent, if we understand his position as stated in brief, that relator did not pursue the proper remedy (see Wyatt v. Parrish, supra, and cases cited), or that the order of allowance was void on its face.

We have said in a number of cases, in substance, that the issue of warrants on the county treasury, in payment of claims which the county governing body has allowed and ordered to be paid, is a ministe-

rial duty imposed on the judge of probate, unless the order of allowance is of itself, and on its face, a nullity, imposing no duty and conferring no rights. When on its face the allowance of a claim is valid, we have said the duty of the judge of probate is plain and simple. He must issue the warrant on the county treasury, in obedience to the order of allowance. If he refuses, courts invested with proper authority can by mandamus require him to issue the warrant. Some of our cases so holding are Commissioners' Court v. Moore, 53 Ala. 25; Jack v. Moore, 66 Ala. 184; Jeffersonian Publishing Co. v. Hilliard, 105 Ala. 576, 17 So. 112; Carnley v. Moore, 214 Ala. 114, 106 So. 604; Gray v. State ex rel. Garrison, 231 Ala. 229, 164 So. 293; Wyatt v. Parrish, 255 Ala. 145, 50 So.2d 424; Smith v. State, 258 Ala. 86, 61 So.2d 707.

But all of those cases were decided prior to September 8, 1953, and the holdings therein must be considered in the light of the provisions of General Act 536 which became effective on that day. Acts of Alabama, 1953, Vol. 2, p. 751. See 1955 Cumulative Pocket Part to Volume Three, Code of 1940, where the publisher has included the provisions of Act 536 as Sections 119(1), 119(2) and 119(3), Title 12, Code of 1940. The pertinent provisions of said Act 536 read:

"Section 1. It shall be the duty of the judge of probate, or the principal or presiding judge of the court of county commissioners, or the president or chairman of the board of revenue or the presiding officer or chairman of the county governing body by whatever name known and designated, or such other officer as is authorized by law to draw county warrants upon the county treasurer or county depository to inspect and review each claim presented for payment from the public funds of the county, irrespective of whether such claim has previously been audited and allowed by the governing body of the county, by whatever name known and called, and such officer shall examine and determine independently, with reference to each of such claims, whether or not the expenditure of public money of the county in payment of such claim is authorized by law and whether or not public funds of the county may be expended for the purpose, or purposes, shown in such claim. Provided, however, that the provisions of this act shall not apply to those claims by law excepted from the requirement of audit and allowance by the governing body of the county.

"Section 2. In making such determination with reference to the authorized expenditure of public funds of the county in payment of the claims so presented and filed for payment with the county governing body, the officer here mentioned shall make such investigation and inquiry, both as to fact and legal sufficiency, as he shall deem reasonably necessary to correctly ascertain the legal liability of the county with reference to each of the claims presented for payment. In the event it should be determined by such officer, as a result of such investigation and inquiry, that payment of such claim, or claims, may not lawfully be made from the public funds of the county, he shall refuse to affix his signature to or draw warrant upon the county treasurer or county depository authorizing payment of such claim, or claims, from the public funds of the county.

"Section 3. Should such officer draw a warrant upon the county treasurer or county depository in payment of a claim, or claims, not legally chargeable to or payable from the public funds of the county such officer shall be held jointly liable with the other members of the governing body of the county for such unauthorized or unlawful expenditure of the public funds of the county, and shall bear the same

responsibilities and suffer the same penalities as do the other members of the governing body of the county with reference to the unauthorized or unlawful expenditure of public funds of the county. Provided, however, that this Act shall in no way affect or repeal the protection to such official or officials as provided for under written opinion of the Attorney General, Code of Alabama 1940, Title 55, Section 241 and/or under written opinion of the County Attorney, Code of Alabama 1940, Title 62, Section 155."

We see no occasion to elaborate upon the language just quoted. It is plain and in our opinion unquestionably has the effect of changing the law of this state as announced by this court in the cases cited above so that it cannot now be held that the only duty which rests upon a chairman of a county governing body in connection with the issuance of warrants against the county treasury or county depository in payment of claims audited, approved and allowed by that governing body is purely ministerial unless the order purporting to allow the claim is void on its face.

With that question out of the way, we return to a consideration of the averments of the answer of the respondent probate judge.

The respondent denied the averments of the petition to the effect that his action in refusing to sign the warrant was arbitrary or capricious. As to why he refused to sign the warrant the respondent averred:

" * * * and says that this Respondent failed and refused to sign said warrant due to the fact that said warrant was for a claim for road machinery, which the Petitioner had delivered to the Engineer of Chilton County, Alabama, and also was for interest on said claim, and that said claim was not, on its face, shown to be supported by any contract, or agreement for the purchase of said machinery, or the payment of interest.

"7th. And in further answer to said petition, and alternate writ, Respondent says that he refused to sign a warrant for said claim because, as the Presiding Officer of the Board of Revenue and Control of Chilton County, Alabama, and being the officer of said County authorized to draw County Warrants upon the County Treasury of Chilton County, Alabama, he inspected and reviewed the claim described in said petition, and made an examination of same and determined, as such officer, that public money of Chilton County, Alabama could not be expended in the payment of such claim. That no appropriation was included in the budget adopted by the Board of Revenue and Control of Chilton County, Alabama for the purpose of paying said claim. That said claim was not, in fact, an equitable claim, but was filed as an equitable claim for the purpose of avoiding and evading Section 25(a) and (b) of the Act creating the Board of Revenue and control of Chilton County, Alabama. That as a result of said investigation and inquiry made by this Respondent, both as to the facts, and the legal sufficiency of said claim, this Respondent, as such Presiding Officer, determined that said claim was a part of a fraudulent plan and scheme to circumvent, avoid, elude, foil, and evade Section 25(a) and (b) of the Act creating the Board of Revenue and Control of Chilton County, Alabama, which said Section is in words and figures, as follows:

" 'Section 25. (a) All purchases for the County shall be made by the Board or its duly authorized agent. The Board, in making purchases, shall obtain at least three written, sealed, competitive bids for all purchases of supplies, materials, equipment and contractual services. Invitations for bids

shall be posted on a bulletin board in the courthouse and sent to prospective suppliers at least five calendar days before the final date for submitting bids. Bids shall be opened publicly at a time and place stated in the invitations. The board shall award the purchase to the lowest responsible bidder, or it may reject all bids and re-negotiate the purchase when the public interest will be served thereby. Provided, however, that in making such purchases, the Board shall obtain information from the Division of Purchases and Stores of the Department of Finance concerning the price to the State of the items to be purchased, and if the State price is less than the lowest bid received, and if the delivery date is reasonable, all bids shall be rejected and the purchase shall be negotiated through the State Purchasing Agent.

" '(b) In an emergency purchase of less than fifty dollars ($50) may be made without obtaining bids and without obtaining information from the Division of Purchases and Stores as hereinabove provided, and purchases in excess of fifty dollars ($50) may be made without obtaining bids and without obtaining information from the Division of Purchases and Stores if the Chairman and all the members of the board approve the purchase and such approval is shown in the minutes of the board.'

"That as a result of said investigation and inquiry made by this Respondent, this Respondent determined that said claim was not an equitable claim, and that the machinery described in said petition was not, in good faith, delivered to the County Engineer by the Petitioner, but was so delivered by the Petitioner, who at the time of said delivery, had full knowledge of the law under which said Board of Revenue and Control of Chilton County, Alabama was created, and that said claim, in place of actually being an equitable claim was, in fact, a fraudulent claim, and a part of a scheme perpetrated by said Petitioner, in order to elude and evade said Section 25(a) and (b) of said Act. That said claim being for machinery delivered to Chilton County, Alabama, in violation of Section 25(a) and (b), of said Act hereinabove referred to, that this Respondent was, and is, of the opinion that he would be subject to criminal prosecution, fine and imprisonment in the penitentiary of the State of Alabama under Section 30 of said Act, if he allowed said machinery to be purchased and paid for by Chilton County, Alabama, in violation of said Section 25(a) and (b)."

There was no effort on the part of relator to aver a compliance with the provisions of Sections 25(a) and 25(b) of the Act of September 12, 1951, supra, which created the Board of Revenue and Control of Chilton County. Relator relied on the averments to the effect that the equipment was delivered by it to the engineering department of Chilton County and had been continually used by Chilton County in working its roads, and, therefore, relator was entitled to payment of its so-called equitable claim under the provisions now codified as § 110, Title 12, Code of 1940, which provisions were first enacted in 1920. Act 109, approved October 6, 1920, General and Local Acts, Special Session 1920, p. 154.

Section 110, Title 12, reads:

"The court of county commissioners, board of revenue, or other governing body of any county may appropriate from the general or special funds of the county, such sums of money as such governing body shall determine from time to time for the following purposes: First, to reimburse any person, firm or corporation, who in good faith has performed service, advanced money, or property for the use of the county, or who has in good faith

bought county warrants issued under invalid acts of the legislature for tick eradication or for building public roads. Second, to refund to any person, firm or corporation, money, or compensate him or it for services rendered or money or property advanced and devoted to the use of the county, in procuring funds for carrying on road improvement, tick eradication, or any lawful public work, where, after the advancement of such money, or property, or the rendition of such service, it was declared by the decision of the supreme court, or by the decision of the attorney-general that the county was without authority to pay such claims, on account of a defect in any law or any other reason."

In Rice v. Tuscaloosa County, 242 Ala. 62, 4 So.2d 497, 501, we said of the provisions just quoted above which were then codified as § 186, Code 1923:

"Section 186 is not a mandate to the county governing body; on the other hand, it confers a discretionary authority to make payment of certain equitable and moral claims against a county. Escambia County v. Dixie Chemical Products Co., 229 Ala. 287, 156 So. 631."

The petition in this case shows very little more than a delivery of the road equipment by relator to the county engineer and the use of the equipment by the county. There are no averments going to show why such delivery was made without a compliance with the provisions of the local act creating the Board of Revenue and Control of Chilton County.

The answer of the respondent, which stands uncontroverted, is to the effect that the delivery of the road equipment to the county engineer was not made in good faith and that the circumstances surrounding the transaction indicated an effort to evade the bid provisions of the local act affecting Chilton County.

■ We are not saying here that the provisions of § 110, Title 12, have no field of operation to counties operating under a local act similar to the one creating and defining the duties and powers of the Board of Revenue and Control of Chilton County. But we are convinced that under the averments of the respondent's answer in this case it cannot be said that the claim which the governing body approved was for an equitable or moral obligation of the county. For aught appearing relator and the county engineer decided that they would take the law into their own hands and by the simple device of delivery and use circumvent the provisions of the applicable law. There may be circumstances which would warrant the payment of the claim under § 110, Title 12, but they are not shown in this record.

■ We are constrained to the conclusion that when the averments of fact in the respondent's answer are accepted as true, as they must be since they were not controverted, the relator has failed to show a clear legal right to the peremptory writ of mandamus and, hence, the trial court was in error in ordering such a writ to issue.

We see no useful purpose to be accomplished by reviewing separately all the rulings assigned as error.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and COLEMAN, JJ., concur.