(112 So. 181)

### WATSON v. STATE. (5 Div. 629.)

Court of Appeals of Alabama. April 5, 1927.

Jas. A. Hines, of Lafayette, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

BRICKEN, P. J. This appellant and his brother, Horance Watson, were jointly indicted for the offense of murder in the first degree. The indictment charged that they unlawfully and with malice aforethought killed Jack Shockley by shooting him with a gun or pistol, etc.

A severance was granted upon motion of this appellant, and he alone was placed upon trial which resulted in his conviction of manslaughter in the first degree, and the jury fixed his punishment at 2½ years' imprisonment in the penitentiary. From the judgment of conviction pronounced and entered, in accordance with the verdict of the jury, this appeal was taken.

That Jack Shockley, the person named in the indictment, was shot with a pistol upon the occasion in question, and died as a result of such shooting, and that this appellant fired the shots is without dispute. There was no question as to venue. The evidence shows, without dispute, that this appellant was also seriously wounded by having been shot by Shockley.

The respective contentions were in sharp conflict.

The following statement of facts in appellant's brief is substantially borne out by the record:

"The evidence in this case tended to show that this defendant, together with his brother, Horance Watson, and a young lady by the name

of Jenny Abney, were seated in a Ford car about 150 or 200 yards from the Opelika-Fairfax highway, about 11 o'clock at night; that Horance Watson and Jenny Abney were seated on the front seat, the girl being at the steering wheel, and the defendant was in the rear seat, with his feet propped up on the top, with his head on the left side of the seat, and his feet on the right side of the top; that the curtains to the car were all fastened up, and the car closed all around. The evidence further shows that this car was standing 12 or 14 miles south of the town of Lanett, almost on the Chambers and Lee county line. The evidence to this point seems to be without conflict.

"The evidence for the defendant tended to show that, while they were in this position in the car, some one came along and suddenly jerked loose the curtain on the right-hand side of the car, threw a flash light upon the occupants, and a shot was fired from the outside, and the first thing that was heard after the first shot, Restral Watson cried out, 'Oh, he shot me,' and immediately jumped out of the car, falling or sitting on the ground, then quite a number of shots were fired by both sides; that after the firing had ceased, Jack Shockley was shot four times, and the defendant was seriously shot in the knee, breaking the bone above the knee, the shot entering from the inside of the leg.

"The evidence for the state tended to show that the deceased and one Fred·Lyons approached the car of the defendant, in a peaceable manner, one of the men saying, 'Hello, Watson,' and the defendant said, 'Who is that?' and he, Lyons, said, 'It is Lyons.' Lyons then said, 'What are you doing?' and the defendant stated, 'I am doing nothing.' The state witness then let the curtain down at the bottom and was undoing the next latch, and somebody at this time, within the car, fired a pistol, and that the deceased staggered back, saying he was shot. The state witness then ran around the car on the other side and heard the deceased say, 'Drop that pistol, you done shot me,' then considerable firing took place on the other side of the car from the state witness. After which the two men, who were shot, were carried to a hospital at Langdale, two miles away. When the state witness went around the car after the shooting, he found a pistol in the hand of the defendant, and also one in the hand of the deceased."

■ While, as stated, the insistencies as to the details, and as to what occurred after the deceased and Lyons approached and examined into the car, were in sharp conflict; from the whole evidence, it affirmatively appears that their conduct upon the occasion rendered them trespassers beyond all question. Nothing appears in any of the evidence that shows or tends to show that these parties had any right, power, or authority, to approach the automobile of defendant in the manner indicated by the undisputed evidence; nor was there any attempt made upon the trial of this case to show that they,were clothed with any legal right, power, or authority so to do. In other words, the deceased and state witness Lyons had no legal right or authority

to approach the car in the manner indicated, nor to attack, open, or look into the car under the prevailing conditions shown by the whole testimony. So far as these parties were concerned, it was wholly immaterial as to what the parties in the car were doing at the time, it being manifestly no concern of theirs, and it is evident but for their unauthorized, unlawful, and unwarranted conduct upon the occasion in question the unfortunate conditions which followed would not have occurred. Therefore, what witness Lyons "saw in the car when he looked into it," or "what the parties in the car were doing at the time prior to the shooting," was no part of the res gestæ of the shooting complained of, nor was such evidence admissible upon any other theory. The evidence adduced in this connection was highly prejudicial and had no place upon the trial of this case, and the several exceptions duly and legally reserved by the defendant to the rulings of the court in admitting this evidence were well taken, and are sustained; and as a consequence necessitate a reversal of the judgment appealed from.

■ We think, also, that it was permissible to show the condition of the curtains on the car prior to, and after the alleged attack thereon, in order to shed light upon the question as to the manner, method, and extent of said alleged attack by Lyons and Shockley, this matter being in dispute. :The probative force of such evidence, its credibility, and the weight was for the jury.

■ From this record, the purpose and intent of Lyons and Shockley in approaching the car, opening, and looking therein, is not disclosed, nor is there any evidence in this case from which this may be determined. If the purpose was to arrest the inmates of the car, an attempt to do so, under the facts, would have been unlawful, and there is no duty resting upon a citizen to submit to any other than a lawful arrest. Brown v. State, 109 Ala. 70, 20 So. 103. In that case the court, through Brickell, C. J., said:

"The requirements of the statute are * * * ample to secure the execution of and submission to legal process; and they are equally in·· tended to protect the citizen from unlawful interference with his personal liberty. It is not intended that he shall yield his person and liberty to the dominion of even a known public officer, certainly not to one unknown, upon his mere demand, who gives no information of his authority. If this were not true, no man would be safe from invasions of his personal liberty, and unlawful arrests would be made effectual."

See, also, Mangino v. Todd, 19 Ala. App. 486, 98 So. 323; Cobb v. State, 19 Ala. App. 345, 97 So. 779.

Other questions are presented, but need not be discussed. For the errors indicated, the judgment of conviction is reversed and the cause remanded.

Reversed and remanded.