27 So.2d 30

**MITCHELL v. STATE.**

1 Div. 516.

Court of Appeals of Alabama.
Dec. 18, 1945.

Rehearing Denied Feb. 19, 1946.

Remanded on Mandate Aug. 1, 1946.

468

Wm. G. Caffey, of Mobile, for appellant.

Wm. N. McQueen, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant was indicted with one Otto H. McCarron for criminal conspiracy. A

severance having been granted on motion of McCarron the appellant was tried without a jury and by the trial court found guilty and sentenced to pay a fine of $500 and costs.

The indictment contained nine counts and was as follows:

"Count 1. The Grand Jury of said County charge, that, before the finding of this indictment Joseph Mitchell and Otto H. McCarron did unlawfully conspire together to have the names of certain registered voters of Mobile County, Alabama, towit, Morris Loeb and Morris Simon, residents of Ward six in the City of Mobile, Alabama, a voting precinct of Mobile County, Alabama and Morris Brook, a resident of Ward eight in the City of Mobile, Alabama, a voting precinct of Mobile County, Alabama and Clifford Harville, a resident of Ward four in the City of Mobile, Alabama, a voting precinct of Mobile County, Alabama, and Mary P. McLain and Sherman W. McLain, residents of Ward seven in the City of Mobile, Alabama, a voting precinct of Mobile County, Alabama transferred to the registration list of Ward three in the City of Mobile, Alabama, a voting precinct of Mobile County, Alabama and placed on the registration list of said Ward three, the said Morris Loeb, Morris Simon, Morris Brook, Clifford Harville, Mary P. McLain and Sherman W. McLain not being at the time residents of said Ward three, against the peace and dignity of the State of Alabama."

Count 2 of the indictment is identical with count 1, except that it alleges further that the placing of the names of said voters on the registration list of ward 3 would deprive them "of record evidence to show their rights to vote in the ward of their legal residence against the peace and dignity of the State of Alabama."

Count 3 is identical with count 1, except that it omits the name of Clifford Harville as one of those whose names were to be transferred.

Count 4 is identical with count 2, except for the omission of the name of Clifford Harville.

Count 5 is identical with count 1, except that after alleging the conspiracy to have the names of said electors transferred to ward 3, as alleged in count 2, it adds "and thereby cause the Judge of Probate of Mobile County, Alabama, to publish on the list of qualified electors of Mobile County, Alabama, the names of" said six individuals "as qualified electors of said ward three, said" individuals "not being at the time residents of said ward three."

Count 8 is identical with count 1, except that it relates to a single elector, Ruth Pauline McLain.

Count 6 of the indictment charges that Mitchell and McCarron unlawfully conspired together to furnish to the Board of Registrars of Mobile County, Alabama, false evidence that certain registered voters of Mobile County, Alabama, to-wit, naming the same six individuals named in count 1 "were at the time residents of ward three in the City of Mobile, Alabama, a voting precinct of Mobile County, Alabama, so as to cause said Board of Registrars of Mobile County, Alabama, to transfer the names of said" qualified voters "to the registration list of ward three," said voters "not being at the time residents of said ward three, against the peace and dignity of the State of Alabama."

Count 7 alleges that Mitchell and McCarron "conspired together to accomplish an unlawful purpose, in this, that they did unlawfully conspire together to cause the Board of Registrars of Mobile County to transfer the names of" the said six registered electors who were registered electors and residents of other wards than ward 3 "to the registration list of ward three in the City of Mobile," said electors "not being at the time residents of said ward three."

Count 9 charges that Mitchell and McCarron unlawfully conspired together "to furnish to the Board of Registrars of Mobile County, Alabama, false evidence that Ruth Pauline McLain whose name appears on the registration list of Mobile County as a registered elector of Ward eight * * * was at the time a resident of ward three in said City of Mobile, * * * so as to cause said Board to transfer the name of said Ruth Pauline McLain to the registration list of said ward three, the said Ruth Pauline McLain not being at the time a

resident of said ward three against the peace and dignity of the State of Alabama."

The counts of the indictment were attacked by demurrers filed to some of the counts singly, and to groups of the counts together, some 150 grounds being set forth in this manner. The court overruled the demurrers, and no attempt will be made to discuss the innumerable questions thus raised, but only those grounds of demurrer essential to this decision will be mentioned.

Section 44, Title 17, Code of Alabama, provides: "When said board of registrars have sufficient evidence furnished them that any elector has permanently moved from one precinct to another in any county said board of registrars shall transfer the name of such elector to the registration list of the precinct to which such elector has moved."

This section amounts to nothing more than a directive. No penalty is directly or by reference to other Code sections tied in with it. For this reason counsel for appellant in his excellent and comprehensive brief argues that it is "unthinkable that two people who intended or even attempted and failed to accomplish an unauthorized transfer, could be guilty and punishable as criminals for merely having planned the transfer, or for making an unsuccessful effort to do so, while one who actually makes the transfer, whether innocently or knowingly, would not be guilty of any crime or subject to any penalty."

Section 103 of Title 14, Code of Alabama, is as follows:

"Conspiracy defined and punished.— Whenever two or more persons shall conspire: * * *

"to commit any act injurious to the public health, public morals, trade or commerce, or for the perversion or corruption of public justice or the due administration of the law; or,

"to accomplish any criminal or unlawful purpose, or to accomplish a purpose, not in itself criminal or unlawful by criminal or unlawful means;

"every person so conspiring shall be guilty of a misdemeanor and punished as provided in section 101 of this title."

Section 101 of Title 14 fixes the punishment for this offense at a fine of not more than $500, to which may also be added imprisonment in the county jail or hard labor for the county for not more than three months.

The doctrine of criminal conspiracy is at best of vague outline, and has been characterized by Francis B. Sayre as "a veritable quicksand of shifting opinion and ill considered thought." Particularly troublesome has been the question of whether acts done in concert become criminal when the same acts are noncriminal if done by an individual. Sayre, in an article in 35 Harvard Law Review 393, demonstrates conclusively that the doctrine that concerted action under such conditions is criminal sprang from an erroneous statement by Hawkins in his Pleas of the Crown, published in 1716, that "There can be no doubt, but that all confederacies whatsoever, wrongfully to prejudice a third person, are highly criminal at common law." Because of the authoritative character of the author this statement was accepted as correct doctrine by legal writers and found its way into later dicta and judicial decisions. Numerically it prevails today (see Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370; 15 C.J.S., Conspiracy, § 41, p. 1064 and authorities cited), though several respectable courts, in jurisdictions where no statutory provisions cover the question, hold to the rather logical view that plurality of actors does not change the character of the non-criminal act from non-criminal to criminal. Typical of the views of this group of courts is the statement of the Montana court in Lindsay & Co. v. Montana Federation of Labor, 37 Mont. 264, 96 P. 127, 130, 18 L.R.A.,N.S., 707, 127 Am.St.Rep. 722: "There can be found running through our legal literature many remarkable statements that an act perfectly lawful when done by one person becomes by some sort of legerdemain criminal when done by two or more persons acting in concert, and this upon the theory that the concerted action amounts to a conspiracy. But with this doctrine we do not agree. If an individual is clothed with a right when acting alone, he does not lose such right merely by acting with others, each of whom is clothed with the same right. If the act done is lawful, the combination of several

persons to commit it does not render it unlawful. In other words, the mere combination of action is not an element which gives character to the act." See also State v. Eastern Coal Co., 29 R.I. 254, 70 A. 1, 132 Am.St.Rep. 817, 17 Ann.Cas. 96; Clemmitt v. Watson, 14 Ind.App. 38, 42 N.E. 367.

Section 103 of Title 14, supra, has been in our Code only since 1923. However our own court in the early case of State v. Murphy, 6 Ala. 765, 41 Am.Dec. 79, decided in 1854, adopted the view that at common law an indictment will lie for conspiracy: "1st, For a conspiracy to do an act not illegal, nor punishable, if done by an individual, but immoral only."

It is interesting to note that one of the authorities cited by the Attorney General in his brief was Hawkins Pleas of the Crown.

 The doctrine of the Murphy case, supra, is the law of this State today, not on the theory of stare decisis, for the age of the Murphy case considerably weakens its force, but because in our opinion Section 103, Title 14, supra, is comprehensive enough to cover the acts charged to the appellant when done in confederation with another, even though the appellant could not have been proceeded against criminally had he acted alone, for we feel that the conduct of appellant and McCarron were acts injurious to public morals and did tend to pervert the due administration of the law, as denounced in Section 103, Title 14, supra.

The sufficiency of all of the counts of the indictment is further denied by appellant's demurrers on the ground that guilty scienter or knowledge of the wrongfulness of appellant's and McCarron's acts in furtherance of their conspiracy was not alleged in any of the counts.

 Since the Constitution of 1901 our Statutes have regulated registration of electors. It is noted that Section 308 of Title 17, prohibiting unlawful registration and fixing penalties therefor, bases the offenses described therein on a person's knowingly and wilfully bringing about a wrongful registration. Guilty scienter being the basis of the offense of wrongfully procuring the registration as an elector of a person not entitled thereto,

then certainly guilty scienter should be an element of a criminal conspiracy merely to transfer a registered elector from one precinct to another, particularly in light of the innocuous statutory provisions dealing with such transfers.

 The wrongful character of an act inherently unlawful is obvious, and knowledge on the part of conspirators need not be averred in an indictment concerning an act of such nature. However, as well stated in State v. Stewart and others, 59 Vt. 273, 9 A. 559, 570, 59 Am.Rep. 710, "It is otherwise when it becomes wrongful by the presence of accidental or fortuitous features not ordinarily attendant upon it." In such cases knowledge on the part of conspirators is essential to their criminality and must be alleged in the indictment. While it is true that each count of the indictment contains the charge that appellant and McCarron "did unlawfully conspire together," the word "unlawfully" amounts to nothing more than a descriptive epithet in the absence of a statement of facts essential to establish the illegal character of the conduct. Without facts necessary to an affirmation of guilt such statement of unlawfulness is a bald conclusion and the indictment cannot support a judgment of conviction. Holt v. State, 16 Ala. App. 399, 78 So. 315; Mastoras v. State, 28 Ala. App. 123, 180 So. 113; Allen v. State, 30 Ala. App. 147, 2 So.2d 320. Stripped of this mere legal conclusion which must be ignored as surplusage the indictment must stand or fall on the allegation of facts contained therein. A court, in considering the sufficiency of an indictment, makes every presumption in favor of the defendant which the indictment will authorize. State v. Seay, 3 Stew. 123, 130, 20 Am.Dec. 66; Addington v. State, 16 Ala. App. 10, 74 So. 846; and this rule is not satisfied so long as any fact essential to guilt is left to implication or inference. Addington v. State, supra.

 Tested by the above fundamental rules we are of the opinion that the facts charged in this indictment, failing as it does to charge knowledge on the part of appellant, are entirely consistent with innocence of the appellant. Particularly is this conclusion necessary when it is re-

membered that this was a conspiracy indictment based on acts for which the appellant and McCarron could not have been prosecuted had they acted singly. Conspiracy is the automatic rifle of the prosecutor's arsenal. Its range and power covers practically the entire field of concerted human conduct. It is therefore essential that one charged with this crime be fully informed in the indictment. Failing to charge guilty scienter in this case is a fatal defect in the indictment. Complete silence of all counts of the indictment as to knowledge, actual or imputed, of appellant and McCarron that these electors were not entitled to be transferred to ward 3 is a fatal defect in the indictment, and the demurrers thereto should have been sustained. It follows of course that no judgment of conviction on such faulty indictment can stand.

Reversed and rendered.

## On Rehearing.

HARWOOD, Judge.

The Attorney General in his application for a rehearing in this case moves, first, that the judgment heretofore rendered in this cause reversing and rendering same be set aside and one entered affirming the case, and, secondly, that if the original judgment of reversal is adhered to that the case be reversed and remanded rather than reversed and rendered.

After careful reconsideration of the entire record we are firmly of the opinion that the judgment of reversal is correct and must be adhered to.

As to the second proposition, that the case should be reversed and remanded, rather than reversed and rendered, the Attorney General relies on the cases of Wallace v. State, 27 Ala.App. 545, 176 So. 310, and Rogers v. State, 126 Ala. 40, 28 So. 619, and on the operation of Section 226 of Title 15, and Section 810 of Title 7, Code of Alabama of 1940.

The Wallace case, supra, as we read it, holds that the indictment in that case was not void, and in the absence of demurrer would sustain the conviction.

An entirely different situation prevails in the instant case. As stated in the opinion, it is our view that in a criminal conspiracy of the character on which this indictment was based, "knowledge on the part of conspirators is essential to their criminality," and where the indictment failed to aver such essential ingredient, it cannot support a judgment of conviction.

■ Where the defect in an indictment is one of substance, the defendant is not sufficiently apprised by formal accusation of the nature and cause of the charge he is to defend, and such defect is jurisdictional. Sherrod v. State, 14 Ala.App. 57, 71 So. 76, and proceedings under such defective indictment would be violative of Section 6, Alabama Constitution of 1901.

■ Where the indictment is so defective that it cannot support a judgment, the judgment on appeal is usually that the cause is reversed and an order be entered discharging the defendant. Butler v. State, 130 Ala. 127, 30 So. 338; Monroe v. State, 137 Ala. 88, 34 So. 382; Garrett v. State, 140 Ala. 667, 37 So. 1021; Bice v. State, 16 Ala.App. 416, 78 So. 410. The same result was accomplished by the judgment of reversal and rendition in this case, since it affirmatively appears from the record that further prosecution of this case is barred by the statute of limitations. Since no new indictment can be found that could not be successfully defended by a plea of the statute of limitations, such fact presents an additional reason for the appropriateness of the judgment of reversal and rendition entered in this case. Parker v. State, 20 Ala.App. 470, 103 So. 76; McCoy v. State, 27 Ala.App. 18, 165 So. 263; Whaley v. State, 17 Ala.App. 661, 88 So. 24.

The Attorney General urges that in the event of a judgment of reversal the case should be remanded for a new judgment by the court below sustaining the demurrers and holding the defendant to answer a new indictment, or that this court itself should upon reversal and remandment enter an order holding the defendant for the return of a new indictment. The Attorney General relies on Section 810 of Title 7, and Section 226 of Title 15, Code of Alabama, 1940, and the case of Rogers v. State, supra.

Section 810 of Title 7 is as follows: "The appellate court may, upon the reversal of any judgment or decree, remand the same for further proceedings, or render such judgment or decree as the court below should have rendered, when the record enables it to do so."

While Section 226 of Title 15 provides: "When an indictment is lost, mislaid, or destroyed, or when the judgment is arrested, or the indictment quashed for any defect therein, or for the reason that it was not found by a grand jury regularly organized, or because it charged no offense, or for any other cause, or when the prosecution is dismissed because of a variance between the allegations of the indictment and the evidence, and a new indictment is ordered to be preferred, the time elapsing between the preferring of the first charge or indictment and the subsequent indictment must be deducted from the time limited for the prosecution of the offense last charged."

Along with the above Code sections there must necessarily also be considered Section 258 of Title 15, which reads: "When the judgment is arrested, or the indictment quashed, on account of any defects therein, or because it was not found by a grand jury regularly organized, or because it charged no offense, or for any other cause, the court may order another indictment to be preferred for the offense charged, or intended to be charged; and in such case an entry of record must be made, setting forth the facts."

When the three Code sections above set out are read together it is clear that the above proposition urged by the Attorney General is without merit for two reasons: Firstly, Section 258, supra, provides that "the court *may* order another indictment to be preferred" etc. (Italics ours). The court referred to means the trial court, and the action taken in such premises is within his discretion; secondly, Section 258 further provides that in the event the court orders another indictment to be preferred, "an entry of record must be made, setting forth the facts." Since the trial court did not quash the indictment and order the defendant held to answer a new indictment, necessarily no entry of

record was made setting forth the facts. Thus neither of the two necessary conditions precedent to further action by the trial court under the Code sections above mentioned are present.

Application overruled.

PER CURIAM.

Reversed and remanded on authority of Mitchell v. State, 248 Ala. 169, 27 So.2d 36.