318

68 So.2d 65

## SELLERS v. STATE.

### 6 Div. 616.

Court of Appeals of Alabama.

Aug. 11, 1953.

Rehearing Denied Sept. 8, 1953.

J. H. McGuire, Tuscaloosa, for appellant.

Si Garrett, Atty. Gen. (L. E. Barton, Asst. Atty. Gen., and Thos. M. Haas, of counsel), for the State.

HARWOOD, Judge.

The jury trial of this appellant, Jack Sellers, upon an indictment charging assault with intent to murder, resulted in a verdict and judgment of guilty, punishment being fixed at fifteen years in the penitentiary.

The victim of the assault was Bee Sellers, a brother of the appellant.

The evidence introduced in the trial below tended to show that about 1:00 A. M. on 25 July 1952, Bee Sellers was in conversation with one Carson Logan in the front yard of his home.

A car approached and Bee Sellers turned his flashlight off, and went into his house.

The defendant drove up and got out with a flashlight, and a rifle. He demanded to examine Logan's tire tracks. Logan got a rifle from his automobile, but never used it and is not involved in this shooting.

Upon examining Logan's tire tracks the appellant announced that Logan's car was not the car.

From this point on the evidence of the State and that of the defense is in hopeless conflict.

According to the tendency of the State's evidence the appellant, after examination of Logan's tire tracks, began firing into Bee Sellers' house. Bee Sellers emerged from his house and while he was on his porch he was struck twice in the right arm by bullets fired by the appellant. After being struck he fired twice with the shotgun he had and the appellant was hit by several shot.

The evidence introduced by the defense tended to establish that the appellant did not fire his rifle until after Bee Sellers had first shot him.

Evidence introduced by the appellant further tends to show that bad blood had existed between the two brothers for some time and that Bee Sellers had threatened both the appellant and his wife.

The appellant's wife testified that on the night in question she was in appellant's home with her three children, the appellant being away. Two cars drove up to the house shortly before midnight, and a man got out of one of them and came onto the porch and knocked on the door. The house was in darkness and she did not answer the knock as she recognized one of the cars as belonging to Bee Sellers. The man left the porch and the cars drove off.

The appellant returned about twenty minutes after this occurrence and she reported the matter to him. He announced that he was going to track the cars. The record then shows the following during the direct examination of this witness:

"Q. Did he tell you he was going to track that car down? A. He did.

"Mr. Ward: We object.

"Q. Before he set out on the journey to go—

"The Court: Sustained.

"Mr. Ward: That's right.

"Mr. McGuire: We except and offer to show that the Defendant before setting out on the journey or before going to a particular place told this witness where he was going what purpose he was going for, and we offer to show that.

"Mr. deGraffenreid: He could show that by the Defendant.

"The Court: Sustained.

"Mr. McGuire: We except.

"Q. Did he leave immediately after he told you something? A. Yes, sir.

"Q. And immediately after you had told him what had happened and he said something to you? A. He said—

"Q. The Judge won't let you say that. I will ask you if immediately before he left your house, after you told him about this car coming up there, if he told you where he was going and what the purpose of his trip was, did he?

"Mr. Ward: We object.

"The Court: Sustained.

"Mr. McGuire: We except."

In connection with this point the record also shows the following during the direct examination of the appellant immediately after the appellant had testified that he and

his wife had had a conversation upon his return home:

"Q. I will ask you if on that occasion you told her where you were going what the purpose of your visit was and the destination and the object you had in view when you were going?

"Mr. Ward: We object.

"The Court: Sustained.

"Mr. McGuire: We except and offer to show that he did tell his intended journey at that time to his wife, his destination, his object and his intention. We offer that as part of the res gestae, and we except to Your Honor's ruling."

The above rulings, in our opinion, necessitate a reversal of this cause.

We think it clear that what happened at appellant's home upon his return on the night in question, and his almost immediate departure to follow the car tracks were of the res gestae of the later occurrences. Certainly such act is explanatory and illustrative of the main act and sheds light thereon, and was sufficiently close in time to insure its probative force.

The rule is well settled that what a person says on setting out on a journey, or to go to a particular place, explanatory of the object he has in view in so setting out, is res gestae evidence, and as such, may be proven. This is to permit the defendant to show the object and purpose he had in mind in going to the place where the crime was committed, thus shedding light upon his motive, intent, or acts. Harris v. State, 96 Ala. 24, 11 So. 255; Campbell v. State, 133 Ala. 81, 31 So. 802; Maddox v. State, 159 Ala. 53, 48 So. 689; Swinney v. State, 225 Ala. 273, 142 So. 562; Kilgore v. Stanley, 90 Ala. 523, 8 So. 130; Sexton v. State, 19 Ala.App. 408, 98 So. 705; Spelce v. State, 20 Ala.App. 412, 103 So. 694; Graham v. State, 233 Ala. 387, 171 So. 895.

Numerous other points are argued in brief by counsel for appellant as consti-

tuting error. They are unlikely to occur at another trial of this cause, and being clear that the rulings above discussed must cause a reversal of this cause we reserve consideration of these additional points.

Reversed and remanded.