67 So.2d 561

### BRADBERRY v. STATE.

### 6 Div. 642.

Court of Appeals of Alabama.

Oct. 20, 1953.

Chas. E. Tweedy, Jr., and Jim Beech, Jasper, for appellant.

Si Garrett, Atty. Gen., and Maury D. Smith, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for murder in the first degree of Herman Treece.

In the trial below he entered pleas of not guilty and not guilty by reason of insanity.

The jury returned a verdict of guilty of manslaughter in the first degree and fixed appellant's punishment at imprisonment in the penitentiary for a term of five years.

The record in this case is voluminous, and a large number of points are argued in briefs of counsel for appellant. After careful consideration and study we are convinced that the refusal of the court to give appellant's written charge XI, defining manslaughter in the second degree necessitates a reversal of this case. Only so much of the facts will therefore be set forth as will illustrate our conclusions.

About 5:30 on the afternoon of 13 September 1952 Herman Treece and Frank Harbison, deputy sheriffs of Walker County, went to the home of this appellant for the purpose of searching for illegal liquor.

The appellant's premises had been searched on several prior occasions, and appellant sought to show that there had been abuse of his home and of members of his family during these searches, though he admitted that he occasionally sold whiskey in order to support his family. It was also shown that the appellant was rated as 80 per cent disabled by the Veterans Administration due to a heart condition.

The evidence further tends to show that ill feeling existed between the appellant and deputy Harbison, and that appellant and deputy Treece were on friendly terms.

The appellant and two other men, Gladus Rowe and Nelson West, were standing in appellant's yard when the officers drove up.

Deputy Treece approached the appellant and informed him that he thought he had a search warrant for his premises. Appellant told him if he had a search warrant to search where they pleased.

Deputy Harbison searched an automobile standing nearby in the yard. He then approached appellant.

According to Rowe and West, State's witnesses, Harbison had his hand on his pistol as he approached the appellant. West testified that Harbison appeared mad, and he heard some words exchanged between Harbison and appellant though he could not tell what was said.

Appellant testified that as Harbison approached him he was cursing and threatening, and when Harbison pulled his pistol he pulled his.

When gunfire appeared imminent both Rowe and West fled. Thus the appellant was the only witness to the actual shooting.

According to the appellant Harbison fired on him first and he then began firing at Harbison. At this time deputy Treece was standing close to appellant and to appellant's side.

As to the circumstances surrounding the shooting of Treece the appellant testified on direct examination as follows:

"Q. You say he grabbed your gun with his left hand? A. Yes, sir.

"Q. And pulled it down toward him? A. Yes.

"Q. And reached for his gun with his right hand? A. Yes, sir.

"Q. When he grabbed your gun and pulled it out toward him, was your arm out stiff? A. Yes, sir.

"Q. How did that pull your arm then? A. It just jerked my arm right over into him.

"Q. Did your gun fire? A. Yes, sir.

"Q. Do you know whether or not it hit him? A. I don't know.

"Q. What happened then? A. I jerked the gun away from him as he grabbed it with his hand.

"Q. Did the gun fire again? A. Yes, sir.

"Q. How many times did your gun fire there? A. I figure about three times.

"Q. Was all that just in a matter of seconds? A. Yes, sir, just like that.

"Q. The shots—all the shots were right close together? A. Yes, sir.

"Q. When Herman grabbed you and held your gun and went for his gun with his right hand, or made that motion, what was Frank doing then? A. I didn't see Frank any more.

"Q. Did Herman say anything to you then? A. After I jerked the gun loose from Herman and quit shooting, he said, 'I hate Horace that I grabbed your gun.' And I said, 'I hate it too, Herman, I didn't mean to shoot you.'

"Q. And where did Herman go? A. Herman went walking down toward the law's car."

In this connection the appellant further testified on cross-examination:

"Q. You shot him how many times? A. In the scramble I would say three shots.

"Q. Where did he grab your hand? A. He grabbed it right along here (indicating).

"Q. Did he have hold of your gun, too? A. Yes, I imagine he did.

"Q. And you just started pulling the trigger? A. No, I jerked loose from him.

"Q. You shot three times, didn't you? A. Well, as I jerked loose—

"Q. Each time he jerked you shot him? A. I don't know how it was.

"Q. . In order to shoot you had to release each time on that trigger, didn't you? A. I guess in the jerking it released itself, I don't know."

In his oral charge to the jury the court did not instruct the jury as to manslaughter in the second degree, and upon the oral request of counsel for appellant to so charge stated to counsel that such request would have to be submitted in writing.

Counsel for appellant did submit in writing a correct charge as to manslaughter in the second degree (Charge XI), which was refused by the court.

■■■ While a member of this court Simpson, J., in Duncan v. State, 30 Ala. App. 356, 6 So.2d 450, 453, reviewed the doctrines of our decisions as they pertain to propriety of refusing to give at accused's request charges relating to manslaughter in the second degree where an accused is charged with a higher degree of homicide. These principles were outlined as follows:

" 'The court is the judge of the law of the case, and in the exercise of this power determines the legality and admissibility of the evidence offered. *An indictment for murder in the statutory form includes manslaughter in the first and second degrees.* The plea of not guilty puts in issue these several degrees of the charge of homicide included in the indictment.' (Emphasis supplied.) Dennis v. State, 112 Ala. 64, 66, 20 So. 925.

"It is much the safer rule to charge upon *all the degrees of homicide* included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense. within some particular degree." (Our italics.) Pierson v. State, 99 Ala. 148, 153, 13 So. 550, 552. (This of course because of the difficulty which may arise to distinguish between the various degrees of homicide. Roberson v. State, 217 Ala. 696, 697, 699, 117 So. 412.)

" 'Our decisions are to the effect that every prisoner at the bar is entitled to have charges given, which without being misleading, correctly stated the law of his case, and are supported by any evidence however weak, insufficient, or doubtful in credibility. Gibson v. State, 89 Ala. 121, 8 So. 98, 18 Am.St.Rep. 96. And in Morris v. State, (Ala.Sup.), 39 So. 608, 611, it is said: "It matters not how slight the tendency of evidence may be towards establishing any material fact involved, the court cannot exclude it from the jury. Its weight is for their determination." ' Burns v. State, 229 Ala. 68, 69, 155 So. 561, 562.

" 'When an indictment comprehends every degree of criminal homicide, and a conviction for murder is sought, the proper rule is to charge upon the characteristics and constituents of murder in each of its degrees, and upon manslaughter also, unless there is an absence of all evidence having a tendency to reduce the offense to manslaughter. Brown v. State, (109 Ala. 70), 20 So. 103; Pierson v. State, 99 Ala. (148), 153, 13 So. 550; De Arman v. State, 71 Ala. 351.' "

■■■ Relating above principles to the testimony of the appellant as excerpted above necessitate the conclusion, in our opinion, that this appellant was entitled to have the jury instructed as to manslaughter in the second degree.

■■■ In our consideration of this case we have not overlooked the principle that the guilt of an accused who, intending to injure one person, accidentally injures another, is to be determined as if the accused had injured his intended victim. Gilbert v. State, 20 Ala.App. 28, 100 So. 566; Lewis v. State, 22 Ala.App. 108, 113 So. 88.

However we do not think that the above principle can find application under the facts of this case.

Under appellant's testimony Harbison was in a different direction from appellant than was Treece at the time Treece was shot, nor did appellant see Harbison after Treece grabbed his pistol. It cannot therefore be rationally said under such testimony that there was any intent on appellant's part to shoot Harbison at the time the bullets were fired into Treece. In this light therefore no transferable intent was extant.

Reversed and remanded.