92 So.2d 678

Hugh W. McCAIN

v.

CITY OF MONTGOMERY.

3 Div. 998.

Court of Appeals of Alabama.

Aug. 14, 1956.

Rehearing Denied Sept. 4, 1956.

Truman Hobbs, Montgomery, for appellant.

Knabe & Nachman, Montgomery, for appellee.

HARWOOD, Presiding Judge.

This appellant was originally prosecuted in the Recorder's Court of the City of Montgomery on a charge of assault and battery in violation of the ordinances of said city.

Appellant was found guilty in the recorder's court, and perfected his appeal to the Circuit Court of Montgomery County. In the circuit court his jury trial resulted in a verdict and judgment of guilty, and hence this appeal to this court.

In the trial in the circuit court the principal witness for the city was Mr. H. D. Cobb who was driving his automobile along Washington Street in said city around 7 P.M. on the evening of 15 April 1955.

As to what occurred upon this occasion we quote the following from Mr. Cobb's testimony:

"I turned the corner on Washington Street, proceeded a short distance and became involved in a heavy traffic jam. There was a gentleman there trying to pull into a parking place, a parallel parking place, by pulling directly into it, and he had everything tied up. Instead of pulling up and backing into it in the normal way, he was trying to pull in the place forward. I stopped to let this man get out. When I stopped another man pulled behind me, directly against my bumper. When I was stopped that way two men left the car in front of me. I left enough room for that car to back; I was stuck in the middle because of traffic in front and back. They proceeded back to my car and asked me if I knew anyone in this building. I said, 'I don't know you, who are you?'

"Q. Was that the Southern Bell Telephone Company building? A. The Southern Bell Telephone Company building?

"Q. Who said that? A. Mr. McCain. He did all the talking for the two men. Mr. Mr. McCain asked me I knew anyone in this building. I said, well, I didn't know whether I did, or not. He said, 'I didn't ask you that. You know whether you do, or not. Have you anything to do with this strike down here in anyway whatsoever?' I told him I wasn't connected with it. He said he didn't know whether I was, or not. I said, 'I answered your question honestly.' He said, 'It is hard for me to believe. Do you know anybody, or have you got any member of your family working in that building?' I said, I asked him who he was, and I got a punch in the nose. He said it didn't make any difference who he was, he wanted to know if I knew anybody in the building.' I said, 'Possibly, it doesn't make much difference to you, but I would be very glad to get out of here and drive home.' When I looked back with a lot of curse words he said, 'It does make a difference.'

"Q. What curse words? A. 'You son of a bitch, it does make a difference.'

"Q. Do you know who said that, which one of the two? A. One of them did the talking for both. Mr. McCain had done all the talking. I was there in the middle with a man on each side. Up to that time McCain was alone on my side of the car. One on each side. I looked around to see if I could turn out into the street, and before I had turned around I was knocked across the front seat. When I tried to get up both of them reached through the window, punched me on the head and neck, and cut my lips. I think the first blow was the one that broke my nose.

"Q. Both of the men struck you there? A. Yes, both of them."

Jennings W. Mitchell, a witness for the city, testified on the occasion in question he saw two men, one of whom was this

appellant, approach Cobb's automobile, and as they came to the automobile on the driver's side they "started reaching down and apparently making motions into the car itself."

In his own behalf the appellant testified he had come to Montgomery from Birmingham with friends. He went to the Southern Bell Telephone building and talked to some people carrying picket signs.

Then he and a man unknown to him began to "check" cars arriving in front of the building. They had talked to the occupants of about two cars when they went to Cobb's automobile. Then, according to the appellant:

"Q. When you walked back to Mr. Cobb's car will you tell us what conversation took place between you and Mr. Cobb? A. I asked him if he knowed anyone working in the building. He told me none of my damn business. I told him it wouldn't make any difference one way or the other, and was about to go up to the next car. That is when this fellow who was checking up the other cars with me came up there and pushed me out of the way and said, 'What is going on, you having any trouble?' Pushed me out of the way and hit Mr. Cobb.

"Q. Did you know who that man was? A. No, sir.

"Q. Did you strike Mr. Cobb? A. No, sir, I didn't strike Mr. Cobb.

"Q. You did see this other man strike him? A. Yes, sir."

The unknown man left immediately and has not been seen since. Appellant stated he had never seen this man before, nor has he seen him since.

Douglas S. Hill, a witness of the appellant, testified to the effect that he saw the appellant talking to Cobb. Some man unknown to the witness walked up, asked, "Well, what is going on here?," pushed

the appellant back to one side and then proceeded to strike Cobb.

The appellant also presented several witnesses who testified to his good reputation.

At the start of the trial below counsel for the appellant objected to the appearance of Mr. Evans Hinson as a special prosecutor.

Mr. Eugene Loe, the regularly appointed attorney for the City of Montgomery, stated to the court that he would at no time relinquish control over the case, and that Mr. Hinson had no authority in the case other than that which he would give.

The court thereupon overruled the objection to Mr. Hinson's appearance as a special prosecutor, and stated that the City Attorney having agreed to Mr. Hinson's appearance, the court was permitting the appearance.

We find no merit in appellant's contention that this ruling constituted error.

A defendant in a criminal prosecution is entitled to a fair and impartial trial, and nothing more. So long as the conduct of the special prosecutor comports to due and orderly procedure a defendant is in no position to complain as to who conducts the prosecution. Jones v. State, 16 Ala.App. 154, 75 So. 830. Certainly, as here, where special counsel acted with the consent of the regular prosecutor, and with permission of the court, no abuse of the discretion vested in the trial court in such matters is present. See also 42 Am.Jur., Prosecuting Attorneys, Section 10.

During the cross examination of the witness Cobb the record discloses the following:

"Q. Have you consulted with a lawyer about bringing a civil action? (Objected to. Objection overruled.)

"Q. Have you consulted with an attorney about bringing an action for civil damages, money damages against anybody as a result of * * *.

"The Court: Unless it is against this man here.

"By Mr. Hobbs: Q. Against McCain as a result of what happened down there? A. The next day I called Mr. Hinson.

"Mr. Hinson: I object to this, if the Court please.

"The Court: I will let you ask him if he consulted anybody, but not the details of what that conversation was.

"By Mr. Hobbs: Q. Who did you consult? A. I consulted Mr. Hinson.

"By the Court: Q. Don't tell what was said. A. I talked to Mr. Hinson on the telephone about bringing an action for damages against McCain. I can give you the whole conversation if you want it. I told him I would like him to protect my interest in this case.

"By the Court: Q. Did that conversation have anything to do with suing for damages about what had happened to you; did you do that? A. Yes, sir, I believe that is correctly stated, I did.

"By Mr. Hobbs: Q. At this time have you any intention of bringing an action * * *.

"Mr. Hinson: I object to that.

"The Court: Not his intention of bringing it. You can ask him if he has brought it, not whether he intends to bring it, or not.

"By Mr. Hobbs: Q. Do you have any intention at the present time of bringing an action for civil damages against Hugh W. McCain for the incident you have testified concerning?

"Mr. Hinson: I object to that. It has nothing to do with this case.

"The Court: I sustain the objection. It has nothing to do with the charge of assault and battery in this case, and what his intentions are in the future, if you object to it.

"Mr. Hinson: I object to any intentions at the present time.

"The Court: I sustain the objection.

"Mr. Hobbs: We would like an exception.

"The Court: All right."

■ The evidence sought as to the present intent of the witness of course called for a mental operation, and brings the matter squarely within our so called "rule of exclusion." This rule, existing in no other jurisdiction, is that a witness may not testify to his own intent or state of mind, notwithstanding the fact that the witness' intent or state of mind is material to the issue.

For some time this rule has been subject to attack, both decisional and in the legal literature of this State. See McElroy, "Admissibility, in Alabama, of a Witness' Testimony to His Own Intent or Other State of Mind," 2 Alabama Lawyer, 221; dissenting opinion of Livingston, J., now C. J., in McGuff v. State, 248 Ala. 259, 27 So.2d 241.

No purpose would therefore be served by further discussion of this rule, other than to observe that the instant question is clearly not within any of the exceptions engrafted upon the rule, and to further observe that despite the attacks upon it the rule in this State is as hale and hearty as ever, and that in the fairly recent case of Pyles v. State, 262 Ala. 1, 78 So.2d 816, 817, it received a strong tonic shot in the arm in the following language:

"The question before us seems to be simply whether or not the rule of exclusion shall be any longer adhered to. Since it has been a part of our law for so long and the pros and cons of its beneficence and propriety have been recanvassed in many of our recent decisions and its status quo maintained, we are not disposed to thus allow it

to be removed by the process of attrition by engrafting on the rule exceptions to it."

■ While it is the doctrine of our cases that it is error not to permit a witness to be examined as to any suit already filed by him, against the defendant, the filed suit is a fact, and not an intention, as called for by the present question.

■ Furthermore, under the testimony of Mr. Cobb that he had called Mr. Hinson the day following the attack upon him in reference to bringing a civil action for damages against this appellant, and requested Mr. Hinson to protect his interests, spelled out to the jury in clearest terms any bias or interest that might have been harbored by Cobb in his role as a witness. Had Cobb been permitted to answer the question, and had his answer been in the affirmative, nothing would have been added to the picture already drawn. The appellant was therefore not probably injured in any of his substantial rights.

Affirmed.