103 So.2d 52

Terrell Eugene GOLDEN

v.

STATE.

3 Div. 992.

Court of Appeals of Alabama.
Jan. 21, 1958.
Rehearing Denied Feb. 11, 1958.

362

R. T. Milner, Robt. S. Milner and Holley, Milner & Holley, Wetumpka, for appellant.

John Patterson, Atty. Gen., Bernard F. Sykes and Geo. Young, Asst. Attys. Gen., for the State.

According to the tendencies of the testimony for the State, the facts were:

The defendant, then sixteen years old, and the deceased went to the same school in Prattville. February 22, 1954, they had a fight at school. Later they were seen leaving school together. Both boys lived in a rural area. The defendant went home, gathered some eggs to take to his grandmother, and left carrying a shotgun, a Winchester, model 37, single barrel, 12 gauge.

His grandmother lived in one side of a duplex house and Mrs. Herbert Misseldine, the deceased's sister, lived in the other side. The defendant, after giving the eggs to his grandmother and having some small talk with her and Mrs. Misseldine, turned to go back home and ran about a hundred yards along a path which led into a dirt road through a field. According to his own testimony, he had his shotgun loaded and cocked as he ran. He further testified that he stumbled and fell and that the jolt of his fall caused the gun to go off. As he looked up he saw that he had shot his cousin. No one else saw this.

The defendant ran back to the Misseldine house and told Mrs. Misseldine that he had shot her brother, then he went back with her to the dying boy. He got a neighbor with a truck to take the deceased to the hospital. On the way to the neighbor's, he threw his shotgun in the underbrush some three hundred yards from the place of the shooting. The sheriff, on the witness stand, related that the defendant gave about the same account to him the day after the shooting.

The State brought in testimony of bad feeling between the two boys, though mostly nothing more than characteristic boyhood promises by the defendant "to get even," except that in one instance, the defendant was shown to have had his hands around his cousin's neck "choking" him, and another time he said that he was going to kill him. Since the verdict was only for second de-

CATES, Judge.

Terrell Golden was convicted in the Autauga Circuit Court of involuntary manslaughter for the fatal shooting of his first cousin, Derrell Golden, a boy of 14. His punishment was set at twelve months' hard labor.

**366**

gree manslaughter, it would seem that the jury attached slight importance to this aspect of the State's case. Moreover, the trial judge instructed the jury to disregard the evidence of the choking.

At the outset, we have a question as to the sufficiency of Count 4 of the true bill, which reads:

"Terrell Eugene Golden, whose name is otherwise unknown to the Grand Jury, killed Derrell Golden by shooting him with a gun, said shooting being intentional and unlawful, but without malice."

The Code form of indictment for voluntary manslaughter is:

"A. B. unlawfully and intentionally, but without malice, killed C. D. by stabbing him with a knife, etc. (or by striking him with a stick, etc., as the case may be)." (T. 15, § 259, No. 75.)

Golden claims that the modification of "shooting" by the phrase, "being intentional and unlawful," is a fatal omission of the adverbs requisite to modify "killed" as set forth in the Code form.

The Code forms of indictment do not preclude the use of other expressions. We consider this count as the equivalent of "intentionally and unlawfully shot Derrell Golden to death." Hence, we perceive no error of substance in attributing the quality to the quo modo rather than to the end product of what is a single transaction. This appears to be the purpose of Code 1940, T. 15, § 231, which provides:

"An indictment must not be held insufficient, nor can the trial, judgment, or other proceedings thereon, be affected by reason of any defect or imperfection in any matter of form which does not prejudice the substantial rights of the defendant on the trial."

In Henry v. State, 33 Ala. 389, the killing was alleged to be only "intentionally" done, which, of course, left the permissible impli-

cation that an intentional killing can still be lawful, e. g., in self defense. The Henry case does not govern here; nor does Mitchell v. State, 248 Ala. 169, 27 So.2d 36 (32 Ala.App. 467, 27 So.2d 30).

The defendant further claims it was error to his injury to admit over his objections testimony that prior to the fatal shooting he had (a) fired his shotgun into the ground near Mrs. Misseldine's back door and (b) asked his grandmother if she wanted him to shoot her cat. The claim of error is that neither incident was part of the res gestae because the deceased was shot several minutes later and at another place. Prejudice is alleged in that it tended to show defendant was "trigger-happy."

In Watson v. State, 22 Ala.App. 57, 112 So. 181, cited by defendant, it was harmful error to admit evidence of what a witness saw in a car or of what the occupants of the car were doing since this testimony was no part of the res gestae. However, in Smarr v. State, 260 Ala. 30, 68 So.2d 6, 10, we find the court saying:

"It was not error to permit Lucy Posey to testify as to what the accused said when she came to the Posey home on the day of the homicide. All the attendant circumstances leading up to and eventuating in the homicide form a part of the res gestae. Smith v. State, 253 Ala. 220, 43 So.2d 821; Collins v. State, 138 Ala. 57, 34 So. 993. In Jones v. State, 181 Ala. 63, 61 So. 434, it was said: 'The acts, declarations, and demeanor of an accused, before or after the offense, whether part of the res gestae or not, are admissible against him, but unless a part of the res gestae are not admissible for him.' 181 Ala. at page 78, 61 So. at page 439."

There was no error here in so letting this testimony in.

James C. Martin, the coroner of Autauga County, an undertaker by profession, and a medical laboratory technician, was allowed to testify as to the cause of

death of Derrell Golden, the deceased. The State adduced Martin's experience and professional qualifications (i. e., he had embalmed bodies of persons killed by gunshot wounds) so that we consider that there was no abuse of the trial judge's discretion shown on this record in permitting Martin to testify as to his opinion. Snead v. State, 251 Ala. 624, 38 So.2d 576; Webb v. State, 251 Ala. 558, 38 So.2d 340.

■ The defendant asserts that alleged threats and details of prior difficulties were erroneously related to the jury. He cites Henson v. State, 114 Ala. 25, 22 So. 127, as authority for reversal. We distinguish the evidence admitted here from that held offending in the Henson case which was a construction of the statute which allows (without evidence of malice aforethought) a conviction of either first or second degree murder for a killing committed with a concealed deadly weapon as is more fully set forth in Code 1940, T. 14, § 316.

The mother of the deceased was asked, "What was the difficulty that the boy had?" No objection was made to this question. The defense moved to exclude the answer to which the court rejoined, "Yes." Thereupon, it was moved that the court instruct the jury that it not be considered. The court then ruled:

"The Court: Yes the choking there, that part of it is excluded gentlemen. Where she said he began to choke him. That is excluded."

The full answer referred to was:

"He said, 'I'll catch you off sometime by yourself and I will get even with you.'"

The trial judge's ruling was correct.

As to threats such as, "I'll catch you off sometime by yourself and I will get even with you," the judge made it clear that difficulties prior to the death were admissible but not the details, and also that statements by the defendant to the deceased bearing on motive could go in. Wright v. State, 252

Ala. 46, 39 So.2d 395, supports the first view, and the second ruling is in accord with Jarrell v. State, 35 Ala.App. 256, 50 So.2d 767 (reversed on other grounds 255 Ala. 128, 50 So.2d 774; see also 255 Ala. 209, 50 So.2d 776). In McDonald v. State, 241 Ala. 172, 1 So.2d 658, 660, the court, per Brown, J., said:

"Testimony going to show motive, though motive is not an element of the burden of proof resting on the state, is always admissible. Brunson v. State, 124 Ala. 37, 40, 27 So. 410; Jones v. State, 13 Ala.App. 10, 68 So. 690.

"Therefore, the court did not err in allowing the witness Province, over defendant's objection, to testify that the deceased kept money in his little store and on his person."

■ On the examination of the defendant's mother, the court erroneously sustained an objection by the special prosecutor as to the defendant's statement on leaving home with his shotgun to go to his grandmother's. Sellers v. State, 37 Ala.App. 318, 68 So.2d 65; McElroy, Evidence in Alabama, § 264, p. 115a. This error was cured by the jury's verdict, i. e., of guilt of the least degree of homicide as to which absence of evil motive is no defense, Gore v. State, 22 Ala.App. 136, 114 So. 791. See also Morgan v. State, 35 Ala.App. 269, 45 So.2d 802.

■ When the sheriff came to question the defendant, his mother insisted that his father be present. The defendant's statement to the sheriff was inculpatory in nature. We consider from viewing the weapon the jury could, as a matter of law, infer that a reasonable man would have been negligent to have run through the area where the deceased was killed with this type of shotgun (*which had no safety*) loaded and cocked.

■ That the boy's father was present when the sheriff took his statement, was a proper circumstance for the State to bring out in showing that the boy was not under

undue inducement. The fact that his mother did not want him questioned in the absence of his father was incidental to the sheriff's visit, and we perceive no error in the State bringing it out in cross-examining Mrs. Golden. The defendant, on cross-examination, testified that he was present when the sheriff was having this conversation with his mother. Beyond that the record does not go, except to show that he talked with the sheriff that evening when his father was present.

We see no harmful effect of the defendant's being silent when his mother asked that the sheriff wait. The defendant, on cross-examining the sheriff, had brought out that the defendant had answered all questions readily. No accusation had then been made against the defendant. He was under no duty to speak up merely because his mother wanted the sheriff to wait. We do not find an analogy with Moore v. State, 261 Ala. 578, 75 So.2d 135. No objection to the mother's being asked on cross-examination about the sheriff's visit was made by the defendant. The implication of damning silence is too remote to have hurt the defendant.

■ The defendant complains of error in not being allowed to testify as to his state of mind when the shot was fired, under the theory advanced in Inter-Ocean Casualty Co. v. Stallworth, 221 Ala. 71, 127 So. 850. The defendant was asked, "Did you intentionally fire that shot?" and, "You didn't purposely fire that gun did you?" The trial judge sustained objections to both of these questions. What there is left of the Stallworth case after the opinions expressed in McGuff v. State, 248 Ala. 259, 27 So.2d 241, we need not conjecture; see McCain v. City of Montgomery, 38 Ala.App. 568, 92 So.2d 678. Several times it was brought out by witnesses and by the defendant's own testimony that he judged the shooting to be an accident and had told various persons so.

Since this court has no discretion to vary the rule of exclusion of uncommunicated motives, we consider there was no error in sustaining the State's objection. We need not go into the aspect of the redundancy of the expected answer being error without injury.

■ On this cross-examination the defendant was asked over objection if he didn't have a habit of carrying the gun with him "just about wherever (he) went." This question went unanswered. Then he was asked without objection. "How long had you had this gun?" "How long had you been using this gun?" Defendant replied, "About a year." Next the solicitor asked, "Had you used it frequently or just occasionally?" The court overruled the defense objection. To support his assertion of error, he cites Ezzell v. State, 13 Ala.App. 156, 68 So. 578, and Stoudemire v. Davis, 208 Ala. 495, 94 So. 498. We do not think these cases apply to this ruling.

This line of enquiry was pertinent because (1) it showed the defendant was familiar with the fatal weapon and the answer elicited, i. e., "frequently," had a tendency to refute the theory of an unavoidable accident, and (2) it went to rebut his claim that he was carrying the gun at the time of the shooting because of the presence of rabid foxes, which had but shortly theretofore been reported in the neighborhood. Both grounds boil down to attacks on the defendant's credibility. This was cross-examination and we do not see that the trial judge abused his discretion. See Poole v. Evergreen Livestock Co., 262 Ala. 131, 77 So.2d 475, where it was not error to cross-examine a truck driver about the workings of the five shift gears on his truck; Wigmore on Evidence (3rd Ed.), § 944; Oates v. State, 262 Ala. 182, 79 So.2d 64 (latitude of cross-examination).

■ The appellant specifies as error the trial judge's letting various State witnesses answer questions, of which, "Do you know Terrell Golden's reputation in the community in which he lived for truth and veracity prior to February 22nd, 1954?" and, "Did you know the reputation of Teddy

Golden for truth and veracity prior to the 22nd day of February, 1954?" were typical. The questioning was limited to repute for truth and veracity, and properly so. That the State chose to confine the repute to the time prior to the shooting, goes to the *weight* of the answer. We see no error. Dodd v. State, 32 Ala.App. 504, 27 So.2d 259.

■ To rebut the defendant's credibility, the prosecution produced Mrs. J. L. Stone, who testified his repute for truthfulness was bad. On cross-examination, she stated she didn't like the defendant. She was next asked, "You don't like Teddy Golden's father or mother either do you?" The State's objection was sustained; and we say without error, because the degree of importance of the witness' testimony did not show an abuse of the trial court's discretion in cutting off a proliferating enquiry into side issues after the witness' bias toward the defendant was shown. See Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141, wherein Gardner, C. J., emphasizes that the importance of the witness' testimony greatly governs the latitude of cross-examination after bias toward the adverse party has been shown. 240 Ala. at page 131, 132, 198 So. at page 147.

We quote from Simpson, J., in Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594, 598:

"* * * And for emphasis we repeat the oft-stated rule that the latitude and extent of such cross-examination is a matter which of necessity rests largely within the sound judicial discretion, which will not be revised on appeal except in extreme cases of abuse. * * *"

■ We are again confronted in brief by the ghost of "gross" negligence. The defendant claims error in the court's oral charge wherein the trial judge said:

"* * * It is the law that a homicide or death caused by an accident is excusable and it is the law that if by misfortune or by misadventure and while in the performance of a lawful act and exercising due care and without an intention to do harm, human life is is taken, the law will excuse it. There must, however, be a concurrence of these facts. The absence of any one will involve guilt. So you look here in determining whether or not death was the result of an accident—you look there to see what the defendant was doing and was he in the performance of a lawful act. Was he doing anything which was unlawful or did he exercise due care and was there no intention to do harm to the human life which he took? If all of those elements concur, then in the eyes of the law, death would be brought about by an accident and the law would excuse it. * * *"

Defense counsel excepted as follows:

"Mr. R. S. Milner: * * * We except to that part where your Honor was defining accidents and where you said that it would not be an accident if the defendant failed to exercise due care. In other words, due care is not the test."

We begin by referring to Rutledge v. State, 36 Ala.App. 457, 60 So.2d 360, to show that the trial judge was generous to the defendant (and overburdened the State) in defining "involuntary manslaughter" as consisting alternatively "in the improper or negligent, gross negligent performance of an act lawful in itself." See charge XI approved in Bradberry v. State, 37 Ala.App. 327, 67 So.2d 561.

Secondly, the lack of "due care" is negligence, Williams v. State, 251 Ala. 397, 39 So.2d 37; Rutledge v. State, above. As to its relation to the defense of justification by reason of an accident, see Jackson v. State, 38 Ala.App. 522, 93 So.2d 804.

Refused charge 49 requested by the defendant is virtually verbatim charge 26, the refusal of which was without error in Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814. In Wilson v. State, 243 Ala. 1, 8 So.2d 422,

such an instruction (No. 44 there) was said to be misleading.

█ Refused charge 74 is identical with charge 6 in Griffin v. State, 150 Ala. 49, 43 So. 197; also given in Jones, Alabama Jury Ins., § 7180. Sanford v. State, 37 Ala.App. 603, 75 So.2d 109, considered a charge taken from charge 5 in the Griffin case. As to how doubt of guilt is to be qualified, see Farrish v. State, 63 Ala. 164, also Mason v. State, 37 Ala.App. 122, 64 So.2d 606, and Robinson v. State, 243 Ala. 684, 11 So.2d 732. We consider that, while this requested charge 74 was a correct statement of law, its subject matter was adequately covered in the trial judge's oral charge which fully directed the jury on the law of the burden of proof and presumption of innocence. Hence, there was no error, Code 1940, T. 7, § 273; Ray v. State, 257 Ala. 418, 59 So.2d 582. The refusal of charges 92 and 111 is without error for the same reason.

█ The evidence not being wholly circumstantial, the refusal of charge 101 was proper. Smith v. State, 252 Ala. 1, 39 So.2d 586. James v. State, 22 Ala.App. 183, 113 So. 648, does not apply.

Charge 104 was covered by the oral charge and by written charge 82, Reeder v. State, 210 Ala. 114, 97 So. 73.

Charge 105 was taken bodily from charge 9 in Stafford v. State, 33 Ala.App. 163, 31 So.2d 146. We consider that the giving of this charge is a matter primarily for the discretion of the trial judge since it is predicated on the evidence disclosing the State's witnesses showing "prejudice or anger against the defendant." We cannot say that all the State's witnesses did so.

█ Charges 48 and 54 were misleading since they used the expression "simple neg-

ligence." Charge 56 is a variant—"mere" negligence. Charge 114 was adequately covered by the oral charges and written charges otherwise given. It also partakes of the "gross" negligence heresy as does charge 56. See Rutledge v. State, above.

Charge 39 (on guilt to a moral certainty), charge 66 (reasonable doubt from all the evidence), charge 22 (evidence reasonably consistent with innocence), and charge 38 (death by an unavoidable accident) were adequately covered in the oral charge.

On the motion for new trial, it was claimed that one of the jurors in the venire was at the time of the trial a resident of Elmore County, having shortly beforehand moved from Autauga County. This man did not serve. The defendant claims his presence in the array caused the defense to have wasted a valuable strike privilege. The cases on nonresidence discovered after verdict are in conflict. Marino v. State, 111 Neb. 623, 197 N.W. 396, and Hinton v. Hinton, 196 N.C. 341, 145 S.E. 615, indicate this as prejudicial error justifying a new trial. Sturrock v. State, 229 Ind. 161, 96 N.E.2d 226, stands for treating it as error which is waived if the jury is allowed to go to verdict. Since this question is unlikely to arise on a new trial, we pretermit any consideration as to whether or not Carson v. Pointer, 11 Ala.App. 462, 66 So. 910, is still valid.

█ To the motion for a new trial was annexed an affidavit of counsel that during the noon recess of court March 31, 1955, they "went down town to a drug store in Prattville * * * and * * * saw one of the jurors walking toward town, away from the Court house, in company with a bailiff. No other juror was along at that time." There had been a "consent separation" of jurors the night before.[1] This

---

1. About 5:30 P.M. of the first day, March 30, 1955, the transcript of evidence shows:
 "The Court: Gentlemen of the Jury, it appears that we will not be able to finish the case today and that being the general opinion, it appears that it would

be the reasonable thing to stop now instead of running so late in view of the fact that we will have to come back anyway tomorrow. Now, gentlemen, in a case of this kind, the jury may be kept together over night, but on the other hand, with the consent and by agree-

being a noncapital case, the consent was efficacious and was a waiver of objection to the occasion of the exercise of discretion conferred on the judge, Wright v. State, 262 Ala. 420, 79 So.2d 74. We agree with the defendant that it did not authorize a second separation.

 Code 1940, T. 7, § 764, has rendered obsolete the doctrine in Butler v. State, 72 Ala. 179, that, while a separation of the jury in a felony case is a proper ground for a motion for a new trial and raises a rebuttable presumption of error, the denial of the motion was irrevisable. The present rule is:

"It is now the well settled rule in this jurisdiction that a separation of a jury during the trial of a felony creates, prima facie, a cause for reversible error. A separation being shown, the burden is on the State to affirmatively establish that the separated juror or jurors were subjected to no influences or contacts that might have influenced their verdict. * * *" Wright v. State, 38 Ala.App. 64, 79 So.2d 66, 70, as modified by opinion of Stakely, J., on certiorari 262 Ala. 420, 79 So.2d 74.

Here the record shows no evidence was presented by the State on the motion for a new trial to rebut the presumption of error created by the affidavits showing the separation. Under the rule of all Alabama cases since 1915, the denial of the motion for a new trial was reversible error. Payne v. State, 226 Ala. 69, 145 So. 650; Harris v. State, 233 Ala. 196, 172 So. 347; Arnett v. State, 225 Ala. 8, 141 So. 699.

In Green v. State, 252 Ala. 513, 41 So. 2d 566, evidence was adduced to rebut the presumption of error. Rials v. State, 20

ment of the State, those representing the State and those representing the defendant, it has been agreed that you may go to your own homes and not be required to stay together tonight. * * *"

We add this to illustrate, as is pointed out in Golden's Exhibit No. 2 in support

Ala.App. 228, 101 So. 629, on separation, is dictum without later acceptance.

Reversed and remanded.

On Application for Rehearing

Both appellant and appellee have become applicants for a rehearing. Beyond that unanimity ceases.

 The Attorney General argues that Golden's counsel, in not calling to the court's attention the separation seen by them during the noon recess, waived the error, since the jury was allowed to retire without a motion for a mistrial having been made by Golden.

Penney v. Grant, 16 Ala.App. 510, 79 So. 271, 272, comes nearest to supporting this view:

"* * * But, having the knowledge in his possession, the defendant will not be permitted to speculate upon the verdict, and, if unfavorable, have it set aside. This would itself be a trifling with the court, which should not be permitted. * * *"

There the alleged impropriety was:

"* * * that the plaintiff, during a recess of the court, and while the trial was in progress, made improper remarks to one of the jury derogatory to the character of defendant, * *"

The cases distinguish between misconduct of a juror on his own initiative (e.g., Jones v. Coley, 219 Ala. 23, 121 So. 24) and that springing from the conduct of one of the parties, Ex parte Alabama Fuel & Iron Co., 212 Ala. 1, 101 So. 642, where the court, per Thomas, J., said:

"We do not think the knowledge by defendant's attorney of the juror's con-

of the motion for new trial (ground No. 113), that at no time does the record show a consent by the *defendant* (only of his counsel) to this overnight separation of the jury.

duct during the trial was a waiver of that misconduct because not brought to the attention of the court until the verdict was rendered. * * *"

None of these cases involve separation of jurors pending verdict. Considering the presumption of prejudice arising from separation, we do not deem the knowledge by the defendant's attorney to be a waiver of the error. · Also, to move for mistrial puts the defendant in the position of an adversary with the jury.

"* * * To require a party to make his objection pending the trial might still further prejudice him, especially if it should happen that he was mistaken in making the charge, though ever so honest." Craig & Co. v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803, 805.

We have reviewed our original opinion and the judgment thereon and adhere to them.

Applications overruled.