201 So.2d 405

Carvil DUEITT

v.

STATE.

I Div. 218.

Court of Appeals of Alabama.
June 27, 1967.

At the beginning of the trial, the appellant filed a motion to suppress charging that the alleged confession was obtained (1) while he was incarcerated, (2) without his being offered or allowed counsel, and (3) was a violation of appellant's constitutional rights. A hearing on this motion, out of the presence of the jury and with all counsels present, resulted in denial of this motion by the court who stated the following:

"* * * In matters of this type and character of necessity each case must be adjudged under its own factual situation. I find that the factual situation in the case of Miranda vs. Arizona cited by the United States Supreme Court does not exist in the case under trial. I further find that the statement made by the Defendant in this case was made following an explanation of his Constitutional rights, was made voluntarily after that explanation of rights and is admissible in evidence. I therefore deny the motion to suppress filed by the Defendant."

E. Graham Gibbons, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was found guilty of burglary in the second degree by the Circuit Court of Mobile County, Alabama and sentenced to a term of five years in the State penitentiary. From said judgment he makes this appeal.

On June 4, 1963, in the court house in Green County, Mississippi, appellant was interrogated by Investigator Tom Dees of the Mobile County Sheriff's Office regarding this burglary. Appellant was at that time being held in jail by Mississippi authorities in Leakesville, Mississippi.

Investigator Dees testified that he was one of the investigating officers in this case and that he knew appellant by sight and by name. He stated that he interrogated appellant in the Green County, Mississippi, Court House in a vacant court room; that no judicial proceedings were being held at that time in the courtroom; and that he (Dees) was not armed. The witness stated that appellant was not handcuffed at the time and that no "physical restraints" were placed on him; that no one else in appellant's presence was armed and appellant was not threatened; that appellant was not subjected to any physical pain or any form of physical duress; that he advised appellant that he need not make a statement; and that no leniency or consideration or offer of reward was given to appellant to induce him to make a statement. The witness also stated:

"Q. Would you tell us in your own words what you did tell him concerning

his rights prior to the time that you talked to him.

"A. I told him that he had the right to contact an attorney, that he wasn't compelled to have to make any statement unless he did so desire and that any statement he might make could be held in a Court of Law against him.

"Q. And you explained this to him yourself rather than someone else explaining it to him?

"A. Yes sir.

"Q. Did he ask for a lawyer or did he waive his right to a lawyer?

"MR. GIBBONS: Objection to what he waived Your Honor. That calls for a legal conclusion.

"THE COURT: I sustain that objection.

"Q. What did he do when you advised him of his rights?

"A. He said that he wasn't in a financial position to employ a lawyer and I asked him if he cared to make a statement under the conditions and he agreed."

Mr. Dees then testified that, acting solely on the information given him by appellant, he recovered the two heaters. He testified as follows:

"Q. Now I'll ask you to tell the jury what lead you—don't quote anyone—but what led you to the Johnson residence where you picked up the two heaters?

"THE COURT: Overrule the objection.

"MR. GIBBONS: Exception please.

"A. The Defendant Mr. Dueitt informed me that's where they had taken them to.

"Q. And when he informed you was that or was that not during the conversation about which you have testified about?

"A. It was.

"Q. And under the circumstances you testified about in the absence of duress or promises or anything of that nature? That was that same conversation?

"A. Yes sir.

"Q. Was there anything else that led you to that other than what you had learned from that conversation with the Defendant?

"A. No sir."

Dees stated that another officer wrote the oral statement of appellant in longhand and he (Dees) had it typed. Dees also stated that he was present during the writing and typing and that the only difference in the written statement and the oral statement was the last paragraph of the written statement concerning explanation of appellant's rights, which was added as a matter of form. Dees further testified as follows:

"Q. All right. Would you tell us what transpired between you and the Defendant just before he signed it, concerning his reading it or having it read to him. Would you tell us what occurred just before he signed it.

"A. I asked him if he wished to read it and he said I don't care to read it and I said I'll read it to you and I read it to him.

"Q. All right. And the statements were what you had gotten from the conversation with him?

"A. Yes sir.

"Q. I show you this piece of paper here and ask you if you can identify it.

"A. Yes sir.

"Q. Is that the statement about which you testified?

"A. Yes sir."

In his alleged confession, appellant admitted in detail the manner in which he

and two other individuals burglarized the community center and told the exact disposition of the two heaters. Dees stated that he knew that appellant was "somewhat" illiterate but that appellant signed his name to the statement.

Counsel for appellant has urged that failure on the part of the investigator (Dees) to apprise appellant of his right to counsel, and to advise him that, if indigent, counsel could be provided, must make this alleged confession inadmissible.

Appellant relies upon the case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694, cert. den. California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121, which sets out the "guidelines" for the safeguarding of the constitutional rights of persons during interrogation. The case of Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, cert. den. 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121, states in part the following:

> "Escobedo and Miranda decisions decided on June 22, 1964 and on July 13, 1966 respectively, would not be applied retroactively and respective rules laid down therein would be available only to persons whose trials began after the dates of the decisions and the rules would not affect cases still on direct appeal when they were decided."

Thus, because the trial in the case at bar was on September 22, 1966, Miranda v. State of Arizona, supra, applies.

▮ The record reveals that appellant was asked if he wished to "contact" counsel, and informed the interrogator that he could not afford an attorney. Appellant had, prior to this, been advised of all his rights in conformity with the Miranda decision.

Among its many pronouncements, Miranda states that the right to counsel being present at an interrogation is "indispensable to protection of Fifth Amendment privi-

lege". Also that "failure to ask for a lawyer does not constitute waiver".

Concerning indigent prisoners, Miranda also states the following:

> "In order fully to apprise a person interrogated of extent of his rights under this system then, it is necessary to warn him not only that he has right to consult with attorney, but also that if he is indigent lawyer will be appointed to represent him." U.S.C.A.Const. Amend. 6.

Though Detective Dees informed appellant of his right to counsel, when appellant alleged that he was indigent, Dees asked only if he (appellant) would "care to make a statement without legal counsel and he said yes and we had the conversation". Appellant was never informed of his right to have counsel appointed for him as is required by Miranda, supra.

▮ It might be insisted that appellant waived his right to counsel by agreeing to make a statement without counsel being present. The burden of proving that his rights were waived is upon the State. Seemingly by the record of past offenses of appellant, it might be contended that he had "experience" in this type of surrounding, but Miranda also states that no amount of "circumstantial evidence that person may have been aware of this right will suffice to stand in its stead". In our opinion there was no waiver of this right to counsel by appellant. Miranda holds that waiver must be "specific" waiver, as follows:

> "Defendant may waive affectuation of right to counsel and to remain silent, provided that waiver is made voluntarily, knowingly and intelligently. U.S.C.A. Const. Amends. 5, 6."

It is uncontroverted by the State that no mention of providing counsel if appellant was indigent was made, and likewise uncontroverted that appellant was indigent. The circumstances under which appellant

agreed to make a statement was *not* a waiver of his right to counsel, as the reasonable inference is that he did not know he had that right and the State did not prove waiver.

The trial court attempted to distinguish *Miranda* by its allegation that there is a wholly different fact situation. We cannot agree. Though the facts differ, second degree burglary as against a combination rape-robbery cases in *Miranda*, still the basic concept is the same: protection of the rights of the individual while undergoing in-custody interrogation.

For the above reasons, this cause must be and the same is hereby

Reversed and remanded.