217 So.2d 86

**Roosevelt TAYLOR, Jr.**

v.

**STATE.**

3 Div. 341.

Court of Appeals of Alabama.

Oct. 8, 1968.

Rehearing Denied Dec. 17, 1968.

ly sent for "ABC Supermarket." Defendant's Exhibit D was not restricted by

**576**

Alfred W. Goldthwaite, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and John A. Lockett, Jr., Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Montgomery County, Alabama, for the offense of murder in the first degree. After pleading not guilty and not guilty by reason of insanity, he was tried by a jury, found guilty of first degree manslaughter and sentenced to a term of three years in the penitentiary. From this conviction and sentence, he appeals.

Robert L. Johnson testified for the State that he was at the Elks Club on Cleveland Avenue in Montgomery, Alabama, on April 27, 1967; that he was standing on the front porch with William Stoudermire and Isaac Chappell, the deceased; that after appellant walked up to William Stoudermire and said something to him, Isaac Chappell "made a statement, or he laughed, he said something;" and that appellant stopped talking to Stoudermire and walked over to Chappell. Johnson then testified as follows:

"Roosevelt told Ike Chappell, 'This is not your conversation, man, just stay out of it.' So Ike said—Ike just moved back on the bannister of the porch and Roosevelt grabbed him by the collar with his left hand and he started slapping on him, and Ike said, 'Let go, man, we grew up together, so why don't you leave me alone.' So he just kept on pushing him around the porch and hitting on him. And he had a knife in his hand, and the next thing we knew he had cut Ike.

\*      \*      \*      \*      \*      \*

"We didn't know Ike was cut until he ran in the street. Ike ran in the street on Cleveland Avenue, and he was bleeding on down his left side. So, at that time Roosevelt ran out in the street where he was. And I went out in the street and got between them by the pole, by the street pole, and Roosevelt said—Ike turned around—'If you all come here I am going to kill you.' Ike turned around and ran down Cleveland Avenue and Roosevelt followed him."

Johnson further testified that appellant ran after the deceased for a distance of about one block and stopped and came back. He further stated that he saw the deceased on the porch of a residence nearby and that the deceased was "half-way unconscious" and that blood was on his left thigh.

Dr. Paul E. Shoffeitt testified that he performed a post-mortem examination on

ABC Supermarket's endorsement to any account; hence, West Point was entitled to apply it most favorably to itself as a

payment by ABC Supermarket. Exhibit E bears no endorsement by West Point.

the deceased, Isaac Chappell; that the deceased had a hospital tag on his arm which identified him as Chapple; and that in his opinion the cause of death was hemorrhage and shock as a result of a stab or cutting wound of the upper left leg.

Detective J. D. Wade of the Montgomery Police Department testified to taking a written statement from appellant on the night of the alleged homicide; that appellant had come down to the police station with his father voluntarily; that he (Wade) informed appellant that he had a right to remain silent; that anything he said could be used in a court of law against him; that he had a right to an attorney; that if he could not afford an attorney, one would be appointed for him; that he might stop talking to the officers anytime he wished; and that no one in his presence coerced him nor offered him any reward or promise or hope of reward to make any statement relating to the crime.

On cross-examination, Wade testified in part as follows:

"Q. Now, will you tell the Court from the time you first saw him what you said to him?

"A. I advised him of his rights to an attorney, if he wanted to call anybody he had that right.

"Q. What did you tell him about his rights?

"A. I told him he had a right to an attorney, he didn't have to make any statement whatsoever unless it was in the presence of an attorney. I told him we couldn't furnish him an attorney at that particular time.

"Q. You couldn't furnish him an attorney at that particular time?

"A. Yes, sir. And would be appointed as soon as he took it before the court."

Appellant contends that the trial court erred in refusing appellant's requested written instruction to the jury as to second degree manslaughter.

The charge numbered 14 reads as follows:

"I charge you, gentlemen of the jury, that if you believe from the evidence in the case, beyond all reasonable doubt and to a moral certainty, that the defendant killed the deceased without malice, either express [sic] or implied, and without intent to kill or inflict injury causing death while committing an unlawful act in an improper or negligent manner, he would be guilty of manslaughter in the second degree."

■ This charge was properly refused as being misleading in that it requires that an unlawful act be performed in an "improper or negligent manner" when in fact an act unlawful in itself need not be performed improperly or in a negligent manner to constitute second degree manslaughter.

Appellant contends that the court erred in admitting into evidence a written statement wherein he allegedly confessed to the killing of the deceased because the evidence showed that at the time interrogation began by the police he was told that an attorney could not be furnished for him at that particular time. Appellant submits that, as an attorney could not be furnished at that particular time, the police should not have interrogated him.

In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court of the United States stated in part as follows:

"If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

"This does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior

to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time.

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. State of Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977 [986]."

■ Thus, the fact that the police were not able to provide appellant with counsel at the time of interrogation does not render the statement inadmissible where the suspect has knowingly and intelligently waived his right to counsel.

In *Miranda*, supra, the Supreme Court further stated:

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. * * * "

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77 (1962).

"Failure to ask for a lawyer does not constitute waiver." *Miranda*, supra. See also Dueitt v. State, 44 Ala.App. 22, 201 So.2d 405.

■ Upon a close observation of the record, we find that testimony was admitted into evidence to the effect that appellant had been advised of his right to counsel. However, we find no testimony from which an absolute determination could be made that appellant knowingly and intelligently waived counsel.

Appellant made a motion for the affirmative charge when the State rested contending that the State failed to prove the corpus delicti and that Dr. Shoffeitt testified that he conducted a post-mortem examination on someone whom he could only identify through a hospital tag. Appellant contends that such identification was not sufficient to prove the corpus delicti.

■ The corpus delicti may be proven by circumstantial evidence as well as by direct evidence. Rowe v. State, 243 Ala. 618, 11 So.2d 749; Willingham v. State, 28 Ala.App. 261, 183 So. 887.

In the instant case, Dr. Shoffeitt testified that he identified the body through a hospital tag on the deceased's arm and by what "the doctor and other people told me."

■ However, he also testified as to the description of the deceased and as to the location of the fatal wound in the upper left leg. We are of the opinion that this evidence, together with other testimony of a cumulative nature, was sufficient to establish the identity of the deceased. Slaughter v. State, 21 Ala.App. 211, 106 So. 891.

For the reasons herein set out, the judgment in this cause is due to be and the same is hereby

Reversed and remanded.

CATES, Judge (concurring specially).

As I understand the setting for the refusal of defendant's requested charge 14, the ruling of the trial judge came at the close of his oral charge.

Defense counsel excepted because he omitted any reference to involuntary manslaughter. The court, in effect, said, "Submit a written charge and I will deny it. You mark it refused by me."

Pretermitting the propriety of the trial judge's delegating the signing of his name to another, in view of another trial, I would point out that defense counsel were misled by a defective form book.

True, the charge submitted appears verbatim as § 6775, Jones, Alabama Jury Instructions, purporting to come from Davis v. State, 31 Ala.App. 508, 19 So.2d 356. However, Jones's original text omits vital words which I shall not bother to set out, since the correct text of the charge now appears in the 1962 Pocket Part Supplement.

In view of the very strong language used by Judge Harwood in Bradberry v. State, 37 Ala.App. 327, 67 So.2d 561, it seems to me that if the tendencies of the evidence on behalf of the defendant, Taylor,[1] are the same on a new trial, it would be error for the court below to refuse to charge on manslaughter in the second degree.

Whether or not the charge approved in *Bradberry*, supra, is a good charge, I am not prepared to say, since I am not in a position to completely understand the thrust of all that Judge Foster said in criticizing this court in Davis v. State, 246 Ala. 101, 19 So.2d 358, where the same charge was under consideration. Compare Howard v. State, 41 Ala.App. 360, 132 So.2d 384.

On Rehearing

PER CURIAM.

■ In the light of Square v. State, 283 Ala. 548, 219 So.2d 377, November 14, 1968, the warning given to the appellant

prior to interrogation did not satisfy the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Application overruled.